# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 15, 2011 Session

## IN RE:  DON JUAN J.H., et al.

### Appeal from the Chancery Court for Bledsoe County
### No. 3105     Hon. Jeffrey F. Stewart, Chancellor

### No. E2010-01799-COA-R3-JV-FILED-SEPTEMBER 7, 2011

Petitioners filed a Petition to Adopt the minor child, Don Juan J.H., and the Department of Children's Services then filed a Waiver of Guardianship stating that DCS approved of adoption by the petitioners.  The Trial Court granted petitioners partial guardianship of the child before trial, and the appellants filed a Petition to Intervene in the adoption proceeding which the Trial Court granted.  Upon trial of the case, the Trial Court dismissed appellants' intervening petition and granted the adoption.  Appellants appealed, arguing that the Trial Court refused to conduct a comparative fitness analysis between petitioners and appellants to determine the best interests of the child.  We affirm the Judgment of the Trial Court because appellants were required to contest the guardianship before they would have been eligible to petition for adoption of the child.


### Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.


Philip M. Jacobs, Cleveland,  Tennessee, for the appellants, Nathan and Pamela Riddle.

Alice W. Wyatt, Dunlap, Tennessee, for the appellees, Kelly and Misty Thurman.

Robert E. Cooper, Jr., Attorney General and Reporter, and Marcie E. Greene, Assistant Attorney General, Nashville, Tennessee, for the Tennessee Department of Children's Services.

## OPINION

### Background

Misty and Kelly Thurman, DCS, and N.H. filed a Petition for Voluntary Surrender on August 4, 2009, alleging that the Thurmans were the foster parents of J.H. (d.o.b. 1/25/09) and DonJuan J.H. (d.o.b. 1/17/08), and that the children had been in their custody since January 2009. The petitioners stated that N.H. was the biological mother of the children, and that DCS had been granted partial guardianship of the children. The petitioners stated that the mother wished to surrender her parental rights to the foster parents so that they could adopt the children. DCS joined in the petition to concur that the mother should surrender her rights to the Thurmans, and that it was in the children's best interests that the Thurmans adopt them.

The Thurmans then filed a Petition for Adoption on August 11, 2009, and stated the father had already surrendered his rights to the children, and that the mother was in the process of doing so. DCS filed a Waiver of Guardianship, stating that DCS was waiving its rights to accept the mother's surrender in favor of the Thurmans, and that DCS approved of adoption by the Thurmans.

### The Trial

The record contains the documents relating to the mother's surrender of the children, and also the home study that was completed on the Thurmans. A Motion to Intervene was then filed by Nathan and Pamela Riddle, the former foster parents of DonJuan J.H. The Riddles stated that they had custody of the child from the time he was removed from his parents on June 3, 2008, until January 14, 2009, when he was removed from their home and given to the Thurmans. The Riddles alleged that they were the adoptive parents of Gabriel, DonJuan J.H.'s sibling, and that it was in DonJuan J.H.'s best interests to be with them.

The Thurmans filed a Motion for Partial Guardianship, seeking to have partial guardianship of DonJuan J.H., and J.H. because the mother had surrendered to them, and because they had physical custody of the children. The Court granted the Thurmans partial guardianship on September 14, 2009.

The Thurmans filed a Response to the Riddles' Petition, stating that DonJuan J.H. should be with them and with his sister and not the Riddles. DCS filed a Motion to Intervene by Right, stating that they had partial guardianship of the children, and believed the children should be with the Thurmans and had information to provide to the Court regarding the issue.

DCS then filed a Complaint to Support Adoption and to Present Evidence for the Children's Best Interests, stating that DCS had not given the Riddles permission to adopt DonJuan J.H., and that if they did so, it would take him away from his sister whom he dearly loved. DCS argued that since DCS and the Thurmans had joint guardianship of the children, the Riddles would either have to have the guardianship rights of DCS/Thurmans terminated or DCS/Thurmans would have to consent to the adoption, neither of which had occurred.

The Trial Court entered an Order, stating that it held a hearing on the intervening petition, and heard evidence and accepted exhibits from the Riddles. The Court rendered its Memorandum Opinion from the bench and ruled that the intervening petition did not rise to the level of proof necessary to prevent adoption by the Thurmans, and dismissed the intervening petition. The Riddles then filed a Motion for a new trial or to alter or amend, which DCS and the Thurmans opposed. The Trial Court denied the Motion. The Riddles then filed a Notice of Appeal.

The intervenors' issue on appeal is: Did the Trial Court err in refusing to conduct a comparative fitness analysis between the Thurmans and the Riddles to determine the best interest of the child in this contested adoption proceeding?

**Analysis**

The Riddles argue that the Trial Court erred in failing to conduct a comparative fitness analysis, and rely upon the Supreme Court's opinion in *In re: Sidney J.*, 313 S.W.3d 772 (Tenn. 2010), which mandates that the court conduct a comparative fitness analysis to determine who should adopt when faced with two competing adoption petitions.

*In re: Sidney J.* concerned a child whose father had shot and killed her mother, and after her father was taken into custody, her maternal grandparents took custody of her. *Id.* Both the maternal grandparents and the paternal grandparents petitioned to adopt her, and the trial court did a comparative fitness analysis and determined that the paternal grandparents should adopt. *Id.*

The maternal grandparents appealed, and this Court reversed, finding that the paternal grandparents did not meet the physical custody requirements of the adoption statute. *Id.* The Supreme Court held, however, that Tenn. Code Ann. §36-1-115 stated that an adoption petition could only be filed by a party who had physical custody of the child or who had the right to receive custody, unless they were filing an intervening petition. *Id.* The Court held that the other provisions in the statute relating to physical custody did not apply when there was an intervening petition involved, and that the trial court did not err in considering the intervening petition even though the paternal grandparents did not have physical custody.

-3-

*Id.*

The Supreme Court then discussed the trial court's analysis of the two competing petitions, and said:

> One stated purpose of Tennessee's adoption statutes is to protect "[t]he rights of children to be raised in loving homes that are capable of providing proper care for adopted children and that the best interests of children in the adoptive process are protected." Tenn. Code Ann. § 36–1–101(a)(3) (2005). Although Tennessee's adoption statutes do not outline a specific procedure by which a trial court evaluates two competing adoption petitions, a comparative fitness analysis furthers the purpose of ensuring that a child is placed in the best possible home. Indeed, trial courts currently engage in a comparative fitness analysis to determine which parent is the more fit custodian. *In re C.K.G.*, 173 S.W.3d at 732; *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); see Tenn. Code Ann. § 36–6–106 (2005 & Supp. 2009).

*In re: Sidney J.*, 313 S.W.3d 772, 776 (Tenn. 2010).

In response, the Thurmans and DCS argue that *In re: Sidney* is not applicable because the Riddles and the Thurmans were not on equal footing in this case. They argue that because they had guardianship of the children, they would either have to consent to the adoption or have their guardianship rights terminated pursuant to Tenn. Code Ann. §36-1-113, before the Riddles could possibly seek to adopt DonJuan J.H. Further, they argue that *Sidney* is not factually similar, because there was no indication in *Sidney* that there had been any order of guardianship entered, so both sets of grandparents were equally situated.

Tenn. Code Ann. §36-1-113 is the statutory provision which governs termination of parental rights, and it expressly states that it also applies to terminate guardianship rights as well.[1] Accordingly, unless guardianship rights are voluntarily relinquished by the guardian, they must be terminated in the same manner as parental rights. We have previously held that, when former foster parents filed an intervening petition to adopt a child that DCS had guardianship rights over, the former foster parents would have to (among other things) seek to terminate the guardianship rights of DCS pursuant to Tenn. Code Ann. §36-1-113 before they could adopt the children without the voluntary consent of DCS. *In re: Devon W.*, 2010

---

[1] For example, it states: "chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part". Tenn. Code Ann. §36-1-113(a).)

WL 1526306 (Tenn. Ct. App. Apr. 16, 2010).

This Court has also held that when DCS has been granted guardianship of a child, Tenn. Code Ann. §36-1-102 and 113 grant DCS the right to place the child for adoption, and to consent to the adoption. *In re E.M., II*, 2006 WL 3007511 (Tenn. Ct. App. Oct. 24, 2006). Thus, we held that where the trial court disagreed with DCS' choice of a potential adoptive parent (because she was a single mother) and terminated the biological parents' rights but ordered that DCS find a dual-parent home for the child, the trial court exceeded its authority. *Id.* It is clear based upon these cases and the plain wording of the statute, that when partial guardianship has been granted to DCS or any party, the guardianship carries certain rights that must be dealt with before another party can adopt the child. In this case, the Riddles sought to intervene to adopt DonJuan J.H., but did not seek to terminate the guardianship rights of DCS or the Thurmans, and neither DCS nor the Thurmans consented to the Riddles' request to adopt. Accordingly, the Trial Court properly found, presumably based on a lack of evidence sufficient to justify termination of the guardianships,[2] that the Riddles' evidence "does not rise to the level of proof necessary to prevent the adoption of the child DonJuan by Mr. and Mrs. Thurman", and dismissed the intervening petition.

In sum, where a parent chooses to surrender his or her parental rights directly to the adoptive parents, and where the Court has additionally granted partial guardianship of the child to the adoptive parents, as was done here, the adoptive parents (the Thurmans) are clearly not in the same legal position as the former foster parents (the Riddles),who had custody of the child removed from them for reasons not set forth in this record. Neither DCS nor the Thurmans, the legal guardians of the child, have consented to allow the Riddles to adopt, and the Riddles were not entitled to require the Trial Court to apply a comparative fitness analysis in this case.

We affirm the Judgment of the Trial Court in dismissing the Riddles' Petition. The case is remanded with the cost of the cause assessed to Nathan and Pamela Riddle.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[2] There is no transcript of the hearing on May 5 wherein the Trial Court received evidence from the Riddles, thus, we must presume there was proof to uphold the Court's findings.