IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2, 2021 Session

**TRAVIS PAYNE v. JESSICA PAYNE**

**Appeal from the Chancery Court for Greene County**
**No. 2016CV385      Douglas T. Jenkins, Chancellor**

_____

**No. E2020-01083-COA-R3-CV**
_____

This is an appeal from a dismissal of Mother's petition to modify the parties' permanent parenting plan. The trial court found that Mother failed to carry her burden of proof in showing a material change of circumstances had occurred. Mother now appeals. Because we find that the evidence does not preponderate against the trial court's findings, we affirm its denial of Mother's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Thomas C. Jessee, Johnson City, Tennessee, and Curt Collins, Greeneville, Tennessee, for the appellant, Jessica Payne.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Travis Payne.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

Jessica Payne ("Mother") and Travis Payne ("Father") were previously married and have two minor children born of the marriage, currently ages 6 and 5. The parties' marital home was located in Greene County, Tennessee. In October of 2016, Father filed for divorce. Attached to his complaint for divorce was a proposed temporary parenting plan. In response, Mother submitted her answer and a counterclaim for divorce on February 28, 2017. Mother also filed a separate motion for a temporary parenting plan and notice of hearing. Father objected to Mother's proposed temporary parenting plan and instead requested the trial court approve the temporary parenting plan he initially presented with

his complaint for divorce.

On April 4, 2017, the trial court entered an agreed order to continue the case in which the parties gave notice of their agreement to continue the matter indefinitely while they worked towards a possible reconciliation. However, the attempted reconciliation proved unsuccessful, and Father thereafter filed an answer to Mother's counterclaim for divorce in June of 2017. Later, in September of 2018, Father filed a motion to set mediation, which the parties attended in October of 2018.

Also, sometime in October 2018, Mother advised Father that she intended to relocate to Johnson City, Tennessee. Thereafter, on October 23, 2018, Father filed a motion to amend his proposed temporary parenting plan, requesting that the trial court prevent Mother from moving the parties' children outside of Greene County. Mother filed a response to Father's motion, arguing that a permanent parenting plan could either be litigated by the parties at trial or agreed upon at a later date, as the parties had agreed to reserve the issue pursuant to the mediator's report. Mother also argued that, as she was the children's primary caretaker, she should not be forced to remain in the marital home with Father pending the entry of a permanent parenting plan.

On November 16, 2018, the parties filed a previously-executed marital dissolution agreement ("MDA"). On January 24, 2019, the trial court entered a judgment, declaring the parties divorced and approving the MDA. By its terms, the MDA did not resolve the parenting issues between the parties. Rather, the MDA expressly stated that "[t]he Parties reserve all issues related to the Permanent Parenting Plan and this issue shall be submitted to the Court for final adjudication, unless the Parties agree upon a plan at a later date." Accordingly, in its judgment, the trial court stated that the language of the parties' mediation agreement controlled and the temporary parenting plan would remain in place, leaving the children in their current daycare in Greeneville until the parties agreed otherwise or there was a further ruling from the court. On March 21, 2019, Father again filed a motion for the trial court to accept his proposed parenting plan and establish a shared parenting schedule.

A hearing on the parties' competing parenting plans was held on March 25, 2019. On the date of this hearing, Mother testified as to how she had moved to Johnson City several months earlier. Thereafter, on April 10, 2019, the trial court held a phone conference and stated that Father's parenting plan was in the best interest of the parties' minor children and adopted the residential schedule set forth in Father's proposed parenting plan previously submitted to the court prior to the March 25th hearing.

On May 10, 2019, Father submitted a proposed judgment and a court ordered parenting plan to the trial court. Mother's counsel notified the trial court by letter dated May 13, 2019, that she objected to the proposed judgment submitted by Father. The record reflects that Mother later submitted a competing judgment for the trial court's

consideration. A judgment was ultimately entered on June 5, 2019, with an added notation directing the parties to prepare and submit to the court a permanent parenting plan consistent with the judgment. A subsequent hearing was set for the resolution of the parties' competing parenting plans on July 2, 2019. On the date of the hearing, however, the parties advised the trial court that they had come to an agreement on the parenting plan, which they both executed and presented to the trial court. The trial court entered a judgment on July 16, 2019, adopting the parties' agreed permanent parenting plan.[1]

Under the permanent parenting plan entered in July of 2019, Father is the designated primary residential parent with each parent having 182.5 days with the children. With equal residential time, the parents are to alternate weeks throughout the year, exchanging the children on Sundays at 6:00 pm. Each parent has the authority to make decisions regarding the children's day-to-day care while the children are in their custody, including "any emergency decisions affecting the health or safety of a child." However, all major decisions regarding education, non-emergency health care, religious upbringing, and extracurricular activities are to be made jointly between Mother and Father. The agreed parenting plan expressly notes that the children are to attend school in the Greeneville City School System.

Approximately eight months after the entry of this parenting plan, on March 11, 2020, Mother filed a petition to modify the parties' permanent parenting plan and attached her proposed parenting plan order. In her petition, Mother argued that "[i]nstances and situations constituting a material change in circumstances affecting the Children's best interest have occurred since the Permanent Parenting Plan was entered." Specifically, Mother alleged that Father "failed to abide" by the parties' parenting plan and "refuse[d] to co-parent" with Mother, among other allegations. In her petition, Mother also argued that, as she resides in Johnson City, it would be in the best interests of the children to attend school in the Johnson City School System. The parties unsuccessfully participated in mediation on June 8, 2020. Father thereafter responded to Mother's petition, arguing that there had not been a material change of circumstances warranting modification and that "[a]ll issues in the present Petition filed by the Mother have been previously litigated and resolved by the Court after trial." The matter was heard on July 16, 2020, after which the trial court entered a judgment dismissing Mother's petition for modification. Mother

---

[1] On appeal, Mother contends that the parties' permanent parenting plan at issue was not an agreed upon parenting plan, but was rather ordered by the trial court. Specifically, Mother argues that she did not agree to the portion of the parenting plan mandating that the children will attend the Greeneville City School System. However, we find Mother's argument in this regard to be without merit. The record now before us clearly reflects that the permanent parenting plan was agreed to by both parties, as it is marked "Agreed" and signed by both parties. Mother argues that she was forced to enter into an agreed parenting plan. Whether it would have been futile in Mother's eyes to litigate the school issue, nothing legally forced her to agree to the parenting plan. Rather, Mother was free to litigate the issue and appeal the matter. However, she apparently chose not to do so.

thereafter filed a timely notice of appeal.

## ISSUE PRESENTED

Mother raises a single issue for appeal, which we have restated here:

> Whether the trial court erred in finding there was no material change in circumstances sufficient to warrant modification of the parties' parenting plan?

## STANDARD OF REVIEW

A determination by a trial court of whether there has been a material change in circumstances is a factual question. *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, this Court shall presume that a trial court's factual findings on such matters are correct unless the evidence preponderates otherwise. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (citing Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984)).

## DISCUSSION

*Whether the Trial Court Erred in Finding No Material Change in Circumstances*

On appeal, Mother contends that the trial court erred when it did not find that a material change in circumstances had occurred. Based on Mother's brief on this issue, we have concluded that her argument is limited to error on the part of the trial court "only as to the designation of the school system that the children would attend." As such, for the purposes of this Opinion, we are concerned only with the trial court's findings as they relate to the issue of the children's schooling.

Once a trial court incorporates a permanent parenting plan into a final decree of divorce, "absent an agreement, the parties must comply with it unless it is modified by the court." *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *4 (Tenn. Ct. App. Dec. 9, 2015) (citing Tenn. Code Ann. § 36-6-405(b) (2014)). In determining whether a requested modification of a parenting plan is warranted, trial courts apply a two-step analysis. *Id.* First, the threshold issue concerns "whether a material change in circumstances has occurred." *Armbrister*, 414 S.W.3d at 697–98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C)). Once a petitioner has shown that a material change in circumstances has occurred, the trial court shall then apply the "best interest" factors espoused in section 36-6-106(a). *Id.* at 698 (citing Tenn. Code Ann. § 36-6-106(a)).

In requesting a modification of a parenting plan, the petitioner "must prove by a preponderance of the evidence a material change of circumstance affecting the child's best

interest, *and the change must have occurred after the entry of the order sought to be modified.*" *Gentile*, 2015 WL 8482047, at *5 (emphasis added) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)). We have previously recognized that section 36-6-101(a)(2)(C) sets a "very low threshold for establishing a material change of circumstances." *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007) (quoting *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006)).

In her brief, Mother advances three points as to why there exists a material change in circumstances such as to warrant modification of the parties' parenting plan. Specifically, Mother predicates her argument 1) on the notion that the parties had difficulty communicating, 2) that the parties' oldest child was ready to enroll in school, and 3) that Mother had recently moved to the Johnson City school district. We will address each of these separately.

Mother argues that, since the entry of the parenting plan, Father has refused to co-parent and communicate with her regarding the children. In support of this, Mother cites to the copies of text messages she provided the trial court where she had texted Father regarding the children with no response. Accordingly, she asserts, "[o]ne parent's refusal to communicate with the other parent can constitute a material change." She relies on a multitude of cases wherein she contends that this Court has held such refusal warrants a material change in circumstances. Indeed, this Court has previously held that a "pattern of conflict and failure to communicate" may support a finding of a material change in circumstances when such conflict and failure to communicate "*affect[s] the [c]hild's well-being in a meaningful way.*" *Hawk v. Hawk*, No. E2015-01333-COA-R3-CV, 2016 WL 901518, at *9 (Tenn. Ct. App. Mar. 9, 2016) (emphasis added). However, as a modification of a parenting plan is a fact-intensive inquiry, each set of facts must be reviewed on a case-by-case basis. *See Armbrister*, 414 S.W.3d at 692 ("A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions."). In her brief, Mother sets forth what she purports to be communication problems present between her and Father. However, we note the trial court's findings[2] on this point wherein it stated:

> The Proof does not show that [Father] has failed to follow the Court ordered Parenting Plan. I . . . think he has. I don't think he has refused to co-parent with the mother. In fact, the children, from what I hear, are doing great.
>
> . . . .
>
> [W]hat difficulties you have are by text[.] . . . I have not heard about you all meeting up in a store parking lot and duking it out or throwing a brick through

---

[2] The trial court's oral findings were incorporated into its judgment.

her window or something like that. . . . I do hear that stuff. Okay? I do hear that but I think you all are generally doing pretty good but I, I just can't find a reason to make a change at the present time.

"When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact." *In re Sidney J.*, 313 S.W.3d 772, 777 (Tenn. 2010) (quoting *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010)). Here, the trial court had to weigh the testimony presented at trial as well as the credibility of the witnesses in making its determination. Based on its judgment, the trial court did not find that the proof presented was such that it rose to the level of a material change in circumstances.

In reviewing the trial court's findings in conjunction with the record before us, we again refer to the language provided in *Hawk*, wherein this Court noted that a "pattern of conflict and failure to communicate" ultimately affected the child's well-being in a "meaningful way." *Hawk*, 2016 WL 901518, at *9. Here, we do not find the communication issues argued by Mother rise to the level such that the children's well-being was affected in a "meaningful way." As noted by the trial court, the children are "doing great." Even in her testimony, Mother agreed with the trial court's statement that "these kids are happy, well adjusted." These findings are in stark contrast to the cases relied upon by Mother in support of her contentions. *See Scogin v. Sorg*, No. M2007-01912-COA-R3-CV, 2009 WL 230233, at *10 (Tenn. Ct. App. Jan. 30, 2009) ("It is obvious from the testimony at trial and the trial court's expression of concern over the parties' level of anger and maturity that Mother and Father are not able to work together for the benefit of their child[.] . . . Rather, their relationship has devolved into a battle for control[.] . . . Mother and Father have exhibited an inability to cooperate over decisions with respect to medical care, schooling, and activities for their child."); *Gentile*, 2015 WL 8482047, at *7 ("Mother and Father . . . do not work well together in parenting."). Conversely, the trial court in this case noted that "I think you all are generally doing pretty good" when it came to communicating and co-parenting their children. Affording considerable deference to the trial court's view of the proof presented and the credibility of the parties' testimony, we find no reason to disturb the trial court's determination that Mother's arguments did not support a finding of a material change.

Mother's second argument centers on the fact that the parties' oldest child, Ava, is now old enough to enroll in school. Specifically, Mother notes that the "needs of the parties' oldest child, Ava, have changed. Ava is now ready to begin elementary school." In support of this, she cites *In re Jesslyn C.*, No. E2014-01385-COA-R3-JV, 2015 WL 1524419 (Tenn. Ct. App. Mar. 31, 2015), noting that, in that case, this Court found that a child beginning school can constitute a material change in circumstances. *In re Jesslyn C.*, 2015 WL 1524419, at *6. Although we acknowledge that changes related to age may constitute a material change in circumstances, we do not agree that the facts before us provide for such modification on this point. In *In re Jesslyn C.*, the child had matured from two to five years old and was ready to begin attending school the following August. *Id.* at

*2. Here, although Ava is not yet enrolled in school, we find her daycare enrollment somewhat synonymous with the routine and schedule the parties will be required to partake in once she begins elementary school. The record makes clear that she has homework and must be taken to and picked up from daycare, much like she will after beginning elementary school. Thus, her reaching elementary age is not necessarily the "change" that Mother purports it to be. Mother argues that, if the children attend school in Johnson City, it will allow Mother to "easily drop off and pick up the children from school" and "allow [Mother] to develop a rapport and maintain communication with the school that is located in her community." However, the relevant inquiry at this stage is not on Mother's personal preferences and her convenience under her proposed change to the parenting plan. Rather, the threshold question involves whether there has been a material change in circumstances that has arisen *since the entry of the permanent parenting plan*. Here, we find no such change.

Finally, Mother contends that her recent move to Johnson City "must be considered" as she is now able to enroll her children in the Johnson City School System. We disagree. Specifically, we find Mother's purported "change" in this regard to be without merit as Mother moved to Johnson City months before entering into the agreed parenting plan. While the parenting plan now at issue was entered into in July of 2019, Mother was already residing in Johnson City, having moved there in December 2018. Although the fact that a plan is "unworkable" may be sufficient to support a finding of material change, this Court recently emphasized that there must still be a *change*. *See Allyn v. Donahue*, No. M2019-02229-COA-R3-CV, 2021 WL 755119, at *4 (Tenn. Ct. App. Feb. 26, 2021) ("[W]hile we note that a parenting plan's unworkability may be sufficient to constitute a material change of circumstances, we cannot circumvent the statutory requirement that there must still be evidence that a **change** of circumstances has occurred."). As Mother has lived in Johnson City since before the current agreed parenting plan was executed by the parties and entered by the court, we agree with the trial judge and do not find her "recent move" to be a material change of circumstance warranting a modification of the parties' parenting plan.

Based on our review of the record on appeal, we find that Mother did not carry her burden in showing a material change in circumstances warranting a modification.

## CONCLUSION

In light of the foregoing, we affirm the trial court's order dismissing Mother's petition.

        s/ Arnold B. Goldin
        ARNOLD B. GOLDIN, JUDGE