IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2015

**ROBERT JOHN SKOWRONSKI v. DONNA RAE WADE**

**Appeal from the Chancery Court for Montgomery County**
No. DI03266     Ross H. Hicks, Judge

_____

**No. M2014-01501-COA-R3-CV – Filed October 27, 2015**
_____

This case involves the modification of a permanent parenting plan naming Mother the primary residential parent. Father petitioned to be named the primary residential parent after Mother moved with the child out-of-state without providing prior notice. After a one-day hearing, the trial court found a material change in circumstance and that naming Father the primary residential parent was in the best interest of the child. Although conceding she failed to give notice of the move, Mother argues there was no material change in circumstance and a change in primary residential parent was not in the best interest of the child. We affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Todd Cole, Brentwood, Tennessee, for the appellant, Donna Rae Wade.

John W. Crow, Clarksville, Tennessee, for the appellee, Robert John Skowronski.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On September 15, 2003, the Chancery Court for Montgomery County, Tennessee entered a final decree of absolute divorce for Donna Rae Skowronski ("Mother") from Robert John Skowronski ("Father"). The couple had one child together, Taylor, who was born in 2001. As part of the final decree, the trial court approved a permanent parenting

plan, which named Mother the primary residential parent with an excess of 275 days of parenting time. Father only received minimal parenting time because, at the time of the divorce, he was active duty military and subject to the possibility of multiple deployments.

In 2007, Mother and Father negotiated a modification of the permanent parenting plan. Mother desired to move with the child to Oklahoma, but she did not have sufficient time to provide the requisite statutory notice.[1] In consideration for acquiescing to the move, Mother agreed to give Father ninety days of parenting time with Taylor and to share the cost of travel for visitation. On August 10, 2007, the court approved a modified permanent parenting plan reflecting the parties' agreement.[2]

On August 28, 2013, Father filed a Petition for Contempt and Change of Custody. As grounds for contempt, Father alleged Mother moved to Texas with Taylor without providing notice. Father further alleged Mother's failure to provide notice of relocation coupled with the move and lack of a stable environment in Mother's home constituted a material change of circumstance justifying a change in primary residential parent. Mother filed a response admitting her failure to provide notice of her move, but she alleged, among other things, that she did not have sufficient time to provide notice due to a job offer. Mother also filed a counter-complaint, seeking an increase in child support.[3]

At the hearing on Father's petition, the trial court heard testimony from both parents. The court also interviewed then thirteen-year-old Taylor in chambers. Father testified that, since his divorce from Mother, he had remained with the Air Force and was currently a squadron operations superintendent with the rank of senior master sergeant. He had remarried and had a daughter, age three, by his new wife. Although at the time of the hearing he lived in Georgia, he had received orders for a permanent change of station to Germany since the filing of the petition.

Father testified his petition to change custody was preceded by an attempt to check Taylor's school grades online. In the interim between the modification of the permanent parenting plan and the petition, Mother had returned to Tennessee, and Taylor was attending school in Montgomery County. When he was unable to log in, Father contacted the school and was advised that Taylor was no longer enrolled. Father then contacted Mother, who

---

[1] The version of Tennessee Code Annotated § 36-6-108(a) in effect at the time required notice to be "mailed not later than sixty (60) days prior to the move." Tenn. Code Ann. § 36-6-108(a) (2013). The permanent parenting plan also contained a provision that tracked the language of the statute.

[2] Neither the order nor the modified permanent parenting plan are included in the record on appeal.

[3] Mother subsequently dismissed her counter-complaint.

informed him of her move to Texas with Taylor. Father stated this was one of several factors that led to his request for a change in primary residential parent.

Father complained that Taylor's life with Mother was not stable. In addition to the moves to Oklahoma and Texas, Father testified that Mother had moved within Tennessee. As a result of the moves, the child had attended several different schools. Father stated Mother had "trouble sustaining employment" and Taylor's living conditions were not always the "best." He described Mother as struggling financially.

Father also complained that Mother sometimes did not keep him informed of events in his daughter's life. The preceding year Mother had contacted Father to obtain some information on health insurance. When he inquired as to why, Father learned Taylor was scheduled for surgery on her legs. Although he agreed the surgery was necessary, he felt he should have been alerted sooner.

Despite the moves, Father acknowledged Taylor was a good student and seemed happy living in Texas. She had maintained mostly A's and B's in school and was involved in a variety of extracurricular activities. Father also acknowledged Taylor's strong relationship with Mother, with whom Taylor had lived the majority of her life. For the first couple of years after the divorce, Father had not been able to exercise all of his parenting time with his daughter due to his deployments overseas.

When asked about Taylor's best interest, Father touted the opportunity to live and attend school in a foreign country. He also claimed he could provide a more stable environment for Taylor. Although still serving in the military, Father stated it was unlikely he would be deployed again due to his current position. Father's assignment in Germany would last at least three years, and he could request an extension, which would allow Taylor, a rising eighth grader, to complete her secondary education in one place. Father conceded that a change in primary residential parent would be an adjustment for Taylor, but he described her as a "pretty resilient kid."

Mother testified that she had married twice since her divorce from Father in 2003. In addition to Taylor, she had four other children, all except the oldest living with her and her current husband in a three-bedroom apartment in Texas. She had moved to Texas from Clarksville in August 2013.

Mother admitted she did not give Father notice of her move to Texas. She stated she was afraid that, if she gave notice, Father might not return Taylor after his parenting time. Although Mother moved to Texas because of a job offer, she ultimately did not take the position because it was not as represented by her prospective employer. After arriving in

Texas, she found another job, but by the time of the hearing, she had been terminated due to excessive absences.

Mother testified she has done the best she could to provide a stable environment for Taylor. When asked whether Taylor has had a stable support environment for the majority of her life, Mother admitted it has been "rocky." Mother explained her frequent moves as a consequence of leasing instead of buying: "If you don't own a house, you just go when your lease is up." She also attributed one of her moves to mold problems in the home. Mother claimed to be looking to buy a house in Texas, which would end the constant moving.

As for the changes in school, Mother acknowledged Taylor had attended two different schools in first grade. Taylor had also changed schools in fourth grade, a change precipitated by mold in the home. Before moving to Texas and starting a new school, Taylor had started middle school in Montgomery County.

At the conclusion of the hearing, the trial court granted the petition to change the primary residential parent. In its written ruling, the court first found "that the Father has carried his burden of proof showing that a material change of circumstances has occurred which could not be anticipated by the parties and the same necessitates change of custody from Mother to Father." The court then considered the factors under Tennessee Code Annotated § 36-6-106(a) (2014).[4] In doing so, the court found the following factors favored one parent over the other:

> 2) <u>The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver.</u> The Court finds that the Mother's unstable employment history casts doubt upon her ability to provide for the minor child. By contrast, the Father has had stable employment since the divorce and is fully capable of providing for the child. Further, the Court finds that due to the Mother's many relocations, the child has had to change schools seven (7) different times. The Court finds these changes as unstable for the child's benefit. This factor favors the Father.
>
> 3) <u>The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-</u>

---

[4] The hearing in this case took place before the effective date of the 2014 revisions to Tennessee Code Annotated § 36-6-106(a). The citations in this opinion are to the pre-2014 version of the statute.

15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody. The Court finds that since the parties' divorce in 2003, the Mother has moved eleven (11) different times. Due to the Mother's many moves, the child has been forced to change schools seven (7) different times. The Mother has three (3) other children and her husband living in a three bedroom apartment. The minor child must share a bedroom with her much younger sister. The Court finds that under the Mother's care, the child has not lived in a stable, satisfactory environment. By contrast, the Father will be transferred to Germany in July 2014 due to military orders. However, the Court finds that this move does not affect the stability of the Father or his ability to provide a stable home for the minor child. This factor favors the Father. There is no evidence of any abuse.

4) The stability of the family unit of the parents or caregivers. The Court has taken into consideration the stability of the family unit of the parents regarding the minor child and finds the Mother's family unit to be unstable. By Mother's own testimony, the child's life has been described as "rocky" while in Mother's care. Mother also shows a lack of stability in her employment and her ability to financially support the child. Father has remarried and has a second daughter with his current Wife. While Father will be transferred to Germany due to military orders, the Court finds that this move does not affect the stability of the Father. The Court finds that the Father has demonstrated that he is a stable person and will provide a stable home for the minor child. This factor favors the Father.

. . . .

6) The home, school and community record of the child. The Court finds that the child has made good grades under Mother's care and has been involved in many different extracurricular activities. However, the Court finds that the minor child's frequent change in schools has resulted in a lack of stability for the child. This factor slightly favors the Father.

7) The reasonable preference of the child, if twelve (12) years of age or older. The Court finds that the child is a well-mannered and very intelligent young lady. She seems to have a good understanding of the present custody action. The Court finds that the child's preference is to stay with the Mother. The Court also finds that the primary reasons the child wants to stay in care of the

Mother is based upon the close relationship with her half-siblings on her Mother's side and the friendships she has developed in Texas. This factor favors the Mother.

. . . .

10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order. The Court finds that Mother did not comply with [Tennessee Code Annotated] § 36-6-108, the parental relocation statute, in her move to Texas and she acted in a clandestine manner by not informing Father of her move to Texas until after she had moved to Texas. Further the Court finds that the evidence preponderates in favor of Father's claims that he was not notified of other moves that Mother made. This factor favors the Father.

The court also adopted a new permanent parenting plan, which was appended to the order.[5] With regard to Father's contempt petition, the court found Mother in civil contempt but did not impose any sanctions.

Mother appeals the decision to modify the permanent parenting plan by designating Father as the primary residential parent.

## II. ANALYSIS

Adjudicating disputes over who should be designated the primary residential parent is one of a court's greatest responsibilities. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). A court's designation of the primary residential parent as part of a final

---

[5] Although the permanent parenting plan provides Mother 42 days of parenting time, the Order of Change of Custody grants Mother six consecutive weeks of visitation in the summer and one week at Christmas. This discrepancy is not raised as an issue on appeal.

decree of divorce is considered res judicata upon the facts in existence or those which were reasonably foreseeable when the decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). However, because circumstances change in unanticipated ways, courts are statutorily empowered to modify a primary residential parent designation. *See* Tenn. Code Ann. § 36-6-101(a)(1) (A decree awarding custody of minor child "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require.").

Courts apply a two-step analysis to requests to change the primary residential parent designation. *Keisling v. Keisling*, 196 S.W.3d 703, 718 (Tenn. Ct. App. 2005). The threshold issue is whether a material change in circumstance has occurred since the court's prior custody order. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 697-98 (Tenn. 2013); Tenn. Code Ann. § 36-6-101(a)(2)(B). Only if a material change in circumstance has occurred do we consider whether a modification is in the child's best interest. *Armbrister*, 414 S.W.3d at 705. The "determinations of whether a material change of circumstances has occurred and where the best interests of the child lie are factual questions." *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007).

On appeal, Mother faults both the factual findings that there was a material change of circumstance and that a change in the primary residential parent was in the child's best interest. Mother also argues the court only modified the permanent parenting plan to punish her for her failure to comply with the parental relocation notice requirements.

A. STANDARD OF REVIEW

We review the trial court's findings of fact de novo on the record with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister*, 414 S.W.3d at 692. In weighing the preponderance of the evidence, determinations of witness credibility are given great weight, and they will not be overturned without clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). "Because '[c]ustody . . . determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings themselves,' appellate courts 'are reluctant to second-guess a trial court's decisions.'" *In re Alexandra J.D.*, No. E2009-00459-COA-R3-JV, 2010 WL 5093862, at *3 (Tenn. Ct. App. Dec. 10, 2010) (quoting *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). We review the trial court's conclusions of law de novo with no presumption of correctness. Tenn. R. App. P. 13(d); *Armbrister*, 414 S.W.3d at 692.

## B. Modification of the Primary Residential Parent Designation

### 1. Material Change in Circumstance

The parent requesting a change in the primary residential parent has the burden of proving the threshold issue of a material change in circumstance by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B). In determining whether a material change has occurred, courts consider the following factors: "(1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way." *Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003).

Not every change in circumstance is a material change; "[t]he change must be significant before it will be considered material." *In re T.C.D.*, 261 S.W.3d at 744. However, the change does not have to pose "a substantial risk of harm to the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). "A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." *Id.*

Mother argues there was no material change in circumstance warranting a modification of the primary residential parent designation. As an initial matter, Mother correctly points out that, although it found "that the Father has carried his burden of proof showing that a material change of circumstances has occurred," the trial court did not state what the material change of circumstance was. In this instance, the court was required to state "the reason and the facts that constitute the basis for the custody determination." *Id.* § 36-6-101(a)(2)(B)(i); Tenn. R. Civ. P. 52.01 ("[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.").

When confronted with insufficient findings of fact in a written order, appellate courts generally pursue one of two alternatives. One alternative is to vacate the decision and remand so the trial court can make specific findings of fact. *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Another alternative is to conduct a "de novo review of the record to determine where the preponderance of the evidence lies." *Id*. The appropriate alternative depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See id*. (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes).

8

In this circumstance, we find a de novo review of the record appropriate. The record is adequate. More importantly, the court addressed the facts relied upon by Father in his request for a change in primary residential parent in conjunction with its analysis of the child's best interest.

Based on the record before us, Mother argues Father failed to show a material change in circumstance. While she admits to violating the terms of the parenting plan and Tennessee Code Annotated § 36-6-108(a) by failing to notify Father of her move to Texas, Mother submits a single violation cannot rise to the level of a material change in circumstance. As noted above, a material change of circumstance may include "failures to adhere to the parenting plan." Tenn. Code Ann. § 36-6-101(a)(2)(B). However, we have been disinclined to allow a single incident to serve as the basis for changing a primary residential parent designation:

> [A]n apparently isolated episode of poor judgment . . . is insufficient to establish a material change of circumstance. If that were the case, no parent ever would be able to maintain custody of his or her children as parents are inherently human and fallible. A parent is not required to be perfect or error free in his/her parenting in order to avoid there being a material change of circumstances.

*Beckham v. Beckham*, No. M2007-02863-COA-R3-CV, 2009 WL 690692, at *12 (Tenn. Ct. App. Mar. 13, 2009).

In this instance, we find Mother's argument unavailing because the lack of notice of her move to Texas is not the sole basis for finding a material change in circumstance. The change in circumstance can best be described as a lack of stability in the life of Mother since she was designated primary residential parent. As the record reflects, Mother's move to Texas was not her only move, and Mother's moves have directly impacted Taylor by necessitating changes in schools. As Mother conceded, Taylor's support system has been "rocky."[6] At the same time, while his life may have lacked stability at the time of the divorce due to his military career and deployments, Father's life has become more stable.

After a thorough review of the record, we find that Father did show a material change in circumstance. Mother's move to Texas, by itself, may not rise to the level of a material

---

[6] Taylor has seen counselors on two separate occasions, but the trial court found she did not have any ongoing issues that required counseling.

9

change in circumstance, but the Texas move coupled with the prior eleven years of moves does.

2. Best Interest of the Child

A material change of circumstance only permits the court to reexamine the parenting plan in light of the child's best interest. *In re T.C.D.*, 261 S.W.3d at 746. The best interest analysis is a "particularly fact-intensive process." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). Under the analysis, the trial court must determine which parent is "comparatively more fit than the other to be the custodial parent." *Id.*

Mother makes two arguments relative to the trial court's best interest analysis. First, she argues the trial court did not conduct a best interest analysis at all. Second, she argues the court failed to properly apply the best interest factors to the evidence in this case.

We can dispense with the first argument quickly. In its order, the court provides "Father has carried his burden of proof showing that a material change of circumstances has occurred which could not be anticipated by the parties and the same necessitates a change of custody from Mother to Father." A material change in circumstance does not necessitate a change in the primary residential parent. *In re T.C.D.*, 261 S.W.3d at 746. Yet, the order's misstatement of the law does not convince us that the court failed to conduct a best interest analysis. The order addresses each of the relevant statutory best interest factors, and the order provides detailed findings of fact in conjunction with each factor it considered.

Mother also claims the trial court erred in its application of the best interest factors. In general, Mother complains the trial court placed too much importance on instability and not enough on continuity. Mother also argues the trial court should have given greater weight to the child's preference. Finally, Mother claims the evidence does not support the trial court's finding that factor 10, Mother's willingness to foster a close relationship between the child and Father, favored Father. To address Mother's argument, we review each factor the trial court considered as favoring one party over the other.

Factor 2 focuses on the willingness of the parents to provide the child with food, clothing, and other necessities and the degree to which a parent has been the primary caregiver. Tenn. Code Ann. § 36-6-106(a)(2). The trial court found factor 2 favored Father because Mother's many moves, job history, and the school changes made the child's environment unstable. The order concludes that "Mother's unstable employment history casts doubt upon her ability to provide for the minor child." In contrast, the court found Father had a stable employment history. The record reflects that Mother has been the

10

primary caregiver since the divorce. Although the trial court found that Mother's job history casts doubt on her ability to provide for Taylor, the record contains no proof that the child ever went without any necessary care. Mother has consistently been willing to provide for Taylor. We find that the evidence preponderates against the trial court's finding that factor 2 favors Father.

Mother claims the trial court did not consider the importance of continuity under factor 3. Factor 3 involves an evaluation of the importance of continuity and the length of time the child has lived in a "stable, satisfactory environment." *Id.* § 36-6-106(a)(3). Although it does not trump the other best interest factors, continuity is a significant factor in child custody cases because stability is important to any child's well-being. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996); *see In re Sidney J.*, 313 S.W.3d 772, 777 (Tenn. 2010) (noting that continuity is an important factor in the best interest analysis); *Wall v. Wall*, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *30 (Tenn. Ct. App. July 14, 2011) (noting that continuity in a child's life and the degree to which one parent has been the primary caregiver are "powerful considerations").

The trial court found "under the Mother's care, the child has not lived in a stable, satisfactory environment." The trial court discounted any benefit the child would receive from continuity because the court found the child's current environment was unstable. "Children thrive in stable environments." *Oliver v. Oliver*, No. M2002-02880-COA-R3-CV, 2004 WL 892536, at *2 (Tenn. Ct. App. Apr. 26, 2004). "The purpose of the emphasis on continuity and the primary caregiver is to provide children without an intact family with as much stability and security as possible." *Maxwell v. Woodard*, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *20 (Tenn. Ct. App. May 31, 2013). "Accordingly, when the evidence shows that continuity does not provide a child with stability, the justification for maintaining the current custody arrangement diminishes, and the evidence may support a finding that it is in the child's best interest to change custody." *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015). *See Wall*, 2011 WL 2732269, at *30. The trial court found Taylor has never lived in a stable, satisfactory environment. Consequently, we cannot conclude that the evidence preponderates against the trial court's finding that factor 3 favors Father.

Factor 6 concerns the child's home, school, and community record. *Id.* § 36-6-106(a)(6). Although the trial court found that Taylor has been a successful student and has been involved in a variety of extracurricular activities, the court also found that Taylor's frequent school changes created a lack of stability. Taylor's good grades do not preclude the court from finding that her constant school changes have been detrimental to her. *See S.A.M.D. v. J.P.D.*, W2011-01256-COA-R3-CV, 2012 WL 5266194, at *17 (Tenn. Ct. App. Oct. 25, 2012). The trial court found that factor 6 only slightly favored Father. While this

factor presents a close question, the evidence does not preponderate against the finding of the trial court.

Mother argues the court should have placed greater weight on Factor 7, the only factor the trial court found in Mother's favor. Factor 7 requires the court to consider the child's preference. *Id.* § 36-6-106(a)(7). The trial court acknowledged Taylor preferred to live with Mother. We have stated on numerous occasions a child's preference is only one of many factors to be given consideration in a custody determination. While a child's preference can be considered, it is not controlling on the court. *Scoggins v. Scoggins*, No. M2007-02148-COA-R3-CV, 2008 WL 2648966, at *6 (Tenn. Ct. App. July 2, 2008).

Mother argues that the trial court erred in finding that factor 10 favored Father. Under factor 10, the trial court must consider each parent's willingness to foster a close relationship between the child and the other parent. *Id.* § 36-6-106(a)(10). The trial court found that Mother's moves without notifying Father evidenced an unwillingness to support a close relationship between Taylor and Father. While Mother testified that she has never interfered with visitation between Taylor and Father, Father is entitled to know the whereabouts of his daughter. The fact that Father has been able to find his daughter each time she has moved does not detract from Mother's apparent indifference to Father's rights. The evidence in this case does not preponderate against the trial court's finding that factor 10 favored Father. The trial court properly considered Mother's pattern of moving without notifying Father as evidence of her unwillingness to foster a close relationship between Taylor and Father.

Based on the foregoing, we cannot conclude that the trial court erred in finding that it was in Taylor's best interest to designate Father the primary residential parent. Even if factor 2 in addition to the child's preference favored Mother as the primary caregiver, factors 3, 4, 6, and 10 still favored Father.

## C. MODIFICATION AS PUNISHMENT

As we have noted, "[p]arenting plans should never be used to punish or reward the parents for their human frailties or past mis-steps." *Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004). Mother contends, again relying on language in the order, that the trial court made Father the primary residential parent as punishment for her failure to notify Father of her move to Texas. The order provided as follows:

> The Court does find that the Mother [is] in civil contempt for
> failure to properly notify Father of her intent to move to Texas
> in August 2013. The Court finds that the Mother moved away in
> a clandestine manner in an attempt to prevent Father from

12

discovering her move before it was made. However, the only sanction that the Court will award to Father as a result of Mother's actions is that he shall be awarded custody of the minor child.

We do not agree with Mother's interpretation of the trial court's order. Read in context, the paragraph cited by Mother merely indicates the court was not disposed to impose sanctions for Mother's contempt in light of its independent decision to designate Father the primary residential parent. The court considered the appropriate factors in modifying the parenting plan, and as noted above, Mother's failure to give notice before her move was only one fact among many relied upon by the court.

### III. CONCLUSION

For the foregoing reasons, the decision of the chancery court is affirmed.

_____
W. NEAL MCBRAYER, JUDGE