FILED
07/29/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 12, 2022 Session

IN RE LYRIC N.

Appeal from the Circuit Court for Hamblen County
No. 2019AD04          Beth Boniface, Judge

No. E2021-00578-COA-R3-CV

Upon competing petitions for adoption of a minor child whose parents are deceased, the trial court conducted a bench trial and a comparative fitness analysis of the petitioner, who is the child's maternal grandmother, and the intervening petitioner, who is the child's paternal aunt. The trial court found that it was in the best interest of the child to be adopted by the paternal aunt while also maintaining visitation with the maternal grandmother. Prior to the bench trial, the trial court set aside its own previously entered order granting what had been presented to the trial court by the maternal grandmother as an uncontested petition for adoption of the child despite the paternal aunt's status as custodian of the child pursuant to a juvenile court order. In the trial court's final order, it granted the paternal aunt's petition for adoption and directed that the maternal grandmother would have unsupervised visitation with the child on alternate Sundays. The maternal grandmother has appealed both the order setting aside the initial grant of her adoption petition and the judgment granting the paternal aunt's petition. Discerning no error in the trial court's decision to set aside the initial adoption decree, we affirm the set-aside order. However, having determined that under the facts and circumstances of this case, the trial court committed reversible error by conducting an in camera interview with the child without counsel or a court reporter present and then withholding the court's summary of the testimony until entry of the final judgment, we vacate the court's judgment granting the paternal aunt's petition. We remand for the trial court to conduct an evidentiary hearing solely to afford the parties an opportunity to present evidence in response to the child's testimony and to enter a judgment after consideration of all proof presented during the trial and on remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Betsy Stibler, Morristown, Tennessee, for the appellant, Christina S.

Donald K. Vowell, Knoxville, Tennessee, and P. Richard Talley, Dandridge, Tennessee, for the appellee, Amy T.

## OPINION

### I. Factual and Procedural History

The child at the center of this action, Lyric N. ("the Child"), was born in January 2012. Her mother, Kennetha S.-N. ("Mother"), died in August 2016, and her father, Richard Jason N. ("Father"), died in June 2019. Mother's death certificate stated that a contributing cause of death was "chronic intravenous drug use." Father's death certificate stated that he had been found deceased in his home with the cause of death pending, and testimony during the instant proceedings indicated that he had been addicted to drugs at the time of his death. Approximately three weeks prior to Father's death, on May 29, 2019, the Child's paternal aunt, Amy T. ("Paternal Aunt"), filed a petition seeking custody of the Child in the Hamblen County Juvenile Court ("juvenile court"). Upon this petition and Father's concomitantly filed "Consent to Transfer of Child Custody," the juvenile court entered an agreed order on June 3, 2019, finding that it was "in the best interest of the child that she be in the custody and control of [Paternal Aunt]" and awarding "the care and full custody" of the Child to Paternal Aunt with "liberal visitation rights" afforded to Father. The juvenile court also found that Paternal Aunt "had taken care of [the Child] for three years" and was "an appropriate custodian."[1]

On July 31, 2019, the Child's maternal grandmother, Christina S. ("Maternal Grandmother"), filed a "Petition for Custody (or in the Alternative Grandparent Visitation) and to Appoint the Minor Child a Guardian Ad Litem" in the juvenile court. In this petition, Maternal Grandmother stated that upon "fil[ing] a custody action" in the juvenile court, Paternal Aunt had "entered an agreed order in that matter transferring custody from Father to her." Referring to Paternal Aunt as the Child's "[c]urrent custodian," Maternal Grandmother averred that Paternal Aunt had "unilaterally denied" her visitation with the Child "[s]hortly before Father's death." Maternal Grandmother also averred that Paternal Aunt had advertised for sale real property belonging to the Child.

The Hamblen County Chancery Court ("chancery court") had entered an order concerning the estate of the Child's paternal grandfather in July 2016, declaring, *inter*

---

[1] In an order entered in April 2015, the juvenile court had awarded temporary emergency custody of the Child to Paternal Aunt during the pendency of an investigation conducted by the Tennessee Department of Children's Services, but the Child was subsequently returned to the parents' custody.

*alia*, that Father held a life estate in real property improved by a duplex, located on Valley Home Road in Morristown ("the Duplex"), with the remainder bequeathed to the Child. In her juvenile court petition, Maternal Grandmother requested that she be granted custody of the Child, or in the alternative, "liberal visitation," and that a guardian *ad litem* be appointed "to protect the child's interest in real property." Upon Maternal Grandmother's emergency motion, the juvenile court entered a temporary restraining order on August 1, 2019, and subsequently a restraining order on August 14, 2019, prohibiting Paternal Aunt from "selling or attempting to sell" the Duplex. At the time of the juvenile court proceedings and at the time of trial in the instant action, the Child resided in one-half of the Duplex with Paternal Aunt, Paternal Aunt's two teenaged biological daughters, and a nine-year-old girl over whom Paternal Aunt had previously been granted custody by the juvenile court in an unrelated dependency and neglect action.

Following mediation, the parties announced an agreement regarding Maternal Grandmother's visitation, which was memorialized in a "Temporary Agreed Order" on September 24, 2019. As Paternal Aunt acknowledges on appeal, the temporary agreed order was signed by both parties and their respective counsel but was not signed by the juvenile court judge. The Hamblen County Circuit Court ("trial court") ultimately took notice of the juvenile court's temporary agreed order as in effect in an interim order entered on January 13, 2020, and in its final decree. The temporary agreed order provided Maternal Grandmother with visitation on alternate weeks from Friday school dismissal (or 3:00 p.m.) through Monday return to school (or 8:00 a.m.). The order also provided visitation to Maternal Grandmother one week during the Christmas holidays and three weeks during the summer. Given that the order stated that "[t]he parties shall initiate discovery within 30 days of this agreement," it was clearly an interim order.

On September 30, 2019, now in the probate division of the chancery court, Maternal Grandmother filed a petition and an emergency *ex parte* petition for guardianship of the Child's person and estate. Again referring to Paternal Aunt as the "current custodian," Maternal Grandmother alleged, *inter alia*, that Paternal Aunt had "improperly managed the child's financial and real assets and intend[ed] to benefit from these transactions." On the same day, the chancery court entered an *ex parte* order appointing Maternal Grandmother as the temporary guardian of the person and estate of the Child. Maternal Grandmother's first visitation weekend under the temporary agreed order ended on the day that she filed the *ex parte* petition in chancery court. In early October 2019, Maternal Grandmother, presenting the chancery court's *ex parte* order, removed the Child from school and assumed physical custody of the Child. According to Paternal Aunt's testimony, she first learned of the chancery court action when she arrived at the school to pick up the Child and found her gone.

On October 4, 2019, with no notice to Paternal Aunt, Maternal Grandmother filed a petition for adoption of a related child in the trial court. Maternal Grandmother stated the following in her petition concerning other proceedings and existing guardianship and custody:

Petitioner has participated as a party in the Juvenile Court of Hamblen County. That case is J190065. Petitioner received guardianship from the Hamblen County Chancery Court over both the person and estate of the child, docket number 2019-CV-482. Both parents are deceased and their death certificates are attached herein.

Petitioner has no information of any proceeding concerning the child pending in a court of Tennessee or any other state that could affect the current proceeding.

Petitioner knows of no person not a party to this proceeding who has legal or physical custody of the child.

Petitioner obtained legal and physical custody of the child on 30 September 2019 by her appointment as temporary guardian of the child's person and estate. The child continues to reside in the physical custody of the Petitioner.

(Paragraph numbering omitted.) Following an in-chambers, uncontested hearing, the trial court entered a "Final Decree of Adoption" on October 8, 2019, granting Maternal Grandmother's petition to adopt the Child.

Upon Paternal Aunt's motion to dismiss the guardianship petition filed by Maternal Grandmother, the chancery court conducted a contested hearing on October 10, 2019. In an order entered on October 10, 2019, the chancery court granted Paternal Aunt's motion to dismiss upon finding that "the same issues are presently pending before the Juvenile Court of Hamblen County, Tennessee, which has original exclusive jurisdiction by statute." The chancery court subsequently entered an order on October 17, 2019, finding that Maternal Grandmother's filing of her adoption petition in the trial court "stays all matters related to the minor child." Third Judicial District Circuit Court Judge Alex E. Pearson entered an order on October 23, 2019, directing that the circuit court (trial court) judge would "adjudicate all issues remaining in the matter by interchange for mutual convenience."

During the October 10, 2019 chancery court hearing, Paternal Aunt learned of the adoption action filed by Maternal Grandmother and the decree entered by the trial court.

- 4 -

On the same day, Paternal Aunt filed a motion in the trial court to set aside the order of adoption, and she requested permission to intervene and adopt the Child. In that motion, Paternal Aunt also requested approval of the sale of the Duplex, stating in this regard: "Also at issue is the sale of the duplex owned by [the Child] and reinvestment into another more suitable home." Maternal Grandmother subsequently filed a motion to dismiss Paternal Aunt's motion to set aside and intervene, arguing, *inter alia*, that Maternal Grandmother had legal and physical custody of the Child at the time of the adoption and that the adoption was final. She also filed a motion opposing "all motions filed" by Paternal Aunt.

On November 8, 2019, the trial court *sua sponte* entered an order setting aside its order granting adoption to Maternal Grandmother. On the same day, the trial court entered an order granting Paternal Aunt's motion to intervene, granting Paternal Aunt "immediate custody" of the Child, and appointing attorney Scott Hodge as a guardian *ad litem* ("GAL") to represent the Child. The trial court found that it had not had "sufficient information before it to make a correct ruling on the child's best interests" when it had entered the adoption decree "due to inaccurate and misleading information in the pleadings, incomplete statements of fact by the attorney, and the testimony given in chambers under oath by [Maternal Grandmother]." The trial court determined that Maternal Grandmother had failed to reveal the existence of an open juvenile court case, Paternal Aunt's status as a custodian of the Child under the juvenile court's order, and the pending contested hearing regarding the chancery court's order granting guardianship over the Child's person to Maternal Grandmother. Noting that the chancery court had subsequently rescinded the guardianship order as void for lack of subject matter jurisdiction, the trial court further determined that as "the custodian[] through Juvenile Court," Paternal Aunt "should have received notice of the adoption petition." On December 6, 2019, Maternal Grandmother filed a motion for permission to file a Tennessee Rule of Appellate Procedure 9 interlocutory appeal of the trial court's order setting aside her adoption of the Child, and Paternal Aunt filed a response objecting to the motion.

In the meantime, Paternal Aunt filed a motion to dismiss Maternal Grandmother's adoption petition on November 13, 2019, for lack of standing because the chancery court's temporary guardianship order had been deemed void. Maternal Grandmother responded by filing a brief, arguing that she did have standing to seek adoption of the Child. The trial court entered an order on January 13, 2020, finding that Maternal Grandmother, as an individual who had lawful physical custody of the Child during visitation under the juvenile court's order, did have standing to file an adoption petition. *See* Tenn. Code Ann. § 36-1-115(b) (2021) ("The petitioners must have physical custody or must demonstrate to the court that they have the right to receive custody of the child sought to be adopted as provided in § 36-1-111(d)(6) at the time the petition is filed,

unless they are filing an intervening petition seeking to adopt the child."); Tenn. Code Ann. § 36-1-102(40) (2021) (defining "physical custody" as "physical possession and care of a child" and explaining that ""[p]hysical custody' may be constructive, as when a child is placed by agreement or court order with an agency, or purely physical, as when any family, including a formal or informal foster family, has possession and care of a child, so long as such possession was not secured through a criminal act."). On appeal, Paternal Aunt has not challenged the trial court's finding that Maternal Grandmother had standing to file an adoption petition.

In June and July of 2020, Maternal Grandmother filed two separate petitions for contempt, asserting that Paternal Aunt had not complied with the visitation schedule set forth in the juvenile court's order. Paternal Aunt filed a response denying all substantive allegations. Following a hearing conducted via Zoom, the trial court entered an order on August 18, 2020, dismissing Maternal Grandmother's petitions for contempt and confirming that Paternal Aunt would be allowed to file an intervening adoption petition. On July 28, 2020, the trial court entered an order denying Maternal Grandmother's motion for interlocutory appeal. Paternal Aunt filed her intervening adoption petition on October 20, 2020.

The trial court conducted a bench trial concerning the competing adoption petitions over the course of two days on April 16 and 19, 2021. In addition to the parties, witnesses included the paternal grandmother; Clinton Anderson, Paternal Aunt's former counsel in juvenile court proceedings; M.B., the Child's second-grade teacher; M.S., the Child's current third-grade teacher; Karen Orsulak, a former Department of Children's Services child abuse investigator who had conducted the 2015 investigation; B.D., Paternal Aunt's neighbor; L.P., the Child's half-sister, who resided with Maternal Grandmother; C.S, Maternal Grandmother's adult son; and three witnesses who vouched for Maternal Grandmother's good character. During the first day of trial, the GAL announced that the Child had requested to speak with the trial court in private, and by agreement, the Child testified in chambers with no attorneys or court reporter present at the end of that day. Although the trial court had initially stated that it would announce the content of the Child's testimony to the parties, after interviewing the Child, the court announced that it would "hold" the information until the second day of trial to alleviate stress felt by the Child. However, at the close of the last day of trial, the court explained that it would be issuing findings of fact and conclusions of law and, while admonishing the parties "not to put any more pressure" on the Child, did not announce the content of the Child's testimony.

On May 13, 2021,[2] the trial court issued a memorandum opinion, making detailed findings of fact and conclusions of law in consideration of the best interest factors provided in Tennessee Code Annotated § 36-6-106(a). Among these findings, the trial court described the Child's testimony, finding the Child to be "a credible witness" and noting that the Child "struggle[d] with being caught in the middle of this litigation." The court described the Child's testimony that she "strongly desire[d] to be adopted by Paternal Aunt" and that she "love[d] Maternal Grandmother but [did] not want to live with her." The trial court entered a final decree of adoption on May 25, 2021, incorporating its memorandum opinion. Finding that it was in the Child's best interest to be in the custody of Paternal Aunt while maintaining visitation with Maternal Grandmother, the trial court declared the Child to be the adopted child of Paternal Aunt and awarded unsupervised visitation to Maternal Grandmother to take place on alternate Sundays from 10:00 a.m. to 7:00 p.m.

Maternal Grandmother timely appealed. Upon a show cause order entered by this Court, the trial court entered an amended final decree on August 13, 2021, correcting flaws in the certificate of service pursuant to Tennessee Rule of Civil Procedure 58. In both the final decree and the amended final decree, the trial court stated that the "Guardian ad Litem fees are reserved for a future hearing." Maternal Grandmother subsequently filed a motion averring that the trial court's amended judgment was not final because the court had reserved the issue of the GAL's fees. Maternal Grandmother requested that this Court direct the trial court to enter a final judgment. This Court entered an order denying Maternal Grandmother's motion on September 29, 2021, stating that "guardian ad litem fees are to be taxed as costs, and motions for costs do not impact the finality of a judgment[.]" *See Gunn v. Jefferson Cnty. Econ. Dev. Oversight Comm., Inc*, 578 S.W.3d 462, 465 (Tenn. Ct. App. 2019). This appeal then proceeded.

## II. Issues Presented

Maternal Grandmother presents three issues on appeal, which we have restated slightly as follows:

1.  Whether the trial court erred by setting aside its prior order granting adoption of the Child to Maternal Grandmother.

2.  Whether the trial court erred by granting Paternal Aunt's intervening petition for adoption of the Child.

---

[2] In an apparent clerical error, the Memorandum Opinion was date stamped May 13, 2020, rather than 2021.

3.      Whether the trial court erred by *sua sponte* changing Maternal Grandmother's visitation schedule with the Child.

Paternal Aunt raises an additional issue, which we have likewise restated as follows:

4.      Whether Maternal Grandmother is judicially estopped or otherwise precluded from arguing that the trial court erred in modifying the visitation schedule, which had been set by the juvenile court, when Maternal Grandmother purportedly made misrepresentations to the trial court and conducted herself before the trial court as though the juvenile court's order did not exist.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  However, we review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

We emphasize that "[t]he watchword of all courts in such things as adoptions and custody of children is the welfare of the child." *In re Haily A. S.*, No. M2011-02760-COA-R3-CV, 2012 WL 3090311, at *3 (Tenn. Ct. App. July 30, 2012) (quoting *In re Adoption of Taylor*, 678 S.W.2d 69, 72 (Tenn. Ct. App. 1984)).  Particularly concerning custody and visitation, this Court has explained:

The details of custody and visitation with children are peculiarly within the broad discretion of the trial judge. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).  Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Id.* (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).  A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).  The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge*, 42 S.W.3d at 85.

*In re M.M.*, No. E2018-01515-COA-R3-JV, 2019 WL 2443432, at *3 (Tenn. Ct. App. June 11, 2019). Likewise, we review post-judgment motions to alter or amend under an abuse of discretion standard. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015).

Concerning the interpretation of statutes, our Supreme Court has elucidated:

> Our role in construing statutes is to ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's intended scope. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). To this end, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

*In re Sidney J.*, 313 S.W.3d 772, 774 (Tenn. 2010).

### IV. Order Setting Aside Prior Adoption Decree

Maternal Grandmother contends that the trial court erred by setting aside its prior order granting adoption of the Child to her. She argues that at the time she filed the adoption petition in the trial court, she had "legal and physical custody" of the Child pursuant to the chancery court's *ex parte* order appointing her the temporary guardian of the person and estate of the Child. She thereby argues that Paternal Aunt was a "former custodian" at that time and was not entitled to notice of the adoption proceedings pursuant to Tennessee Code Annotated § 36-1-117(d). In support of her argument, Maternal Grandmother also relies on the "binding effect of adoption" under Tennessee Code Annotated § 36-1-122. Paternal Aunt contends, *inter alia*, that the trial court properly set aside the prior adoption decree when the court learned that it had received what the court termed "inaccurate and misleading information" and "incomplete statements of fact." Upon careful review, we conclude that the trial court did not abuse its discretion in *sua sponte* setting aside the prior adoption decree.

In its order setting aside the adoption, the trial court stated:

> After review of the technical record, the Court *sua sponte* sets aside the Final Judgment of Adoption due to inaccurate and misleading information in the pleadings, incomplete statements of fact by the attorney,

and the testimony given in chambers under oath by [Maternal Grandmother].

The Court did not make accurate findings of fact regarding the best interests of the minor child due to the Court not being told that there was a recent Juvenile Court Order dated June 3, 2019, that placed custody with the paternal aunt who had cared for "[the Child] for three years and was an appropriate custodian." The Court was not made aware that the Juvenile Court case was still open and active. The only reason [Maternal Grandmother] had custody of the minor child was through a petition for an emergency ex-parte Order for Temporary Guardianship, which she obtained through Chancery Court on September 30, 2019, four days prior to filing for the adoption of the minor child. The Court was not made aware that the Order of Temporary Guardianship was set for an evidentiary contested hearing. On October 10, 2019, the Chancellor rescinded his Order for Temporary Guardianship due to there being an open Juvenile Court case.

[Maternal Grandmother] was not forthright in Paragraph 9 of her Petition wherein she stated that she had no information of any proceeding concerning the child pending in a court in Tennessee. [Maternal Grandmother] did not seek guardianship in the Juvenile Court where she and paternal aunt had an active custody dispute matter but instead went to Chancery Court for guardianship, and then a third court for the adoption. Due to the order of guardianship being ex-parte and ultimately found to be void for lack of subject matter jurisdiction, this Court finds pursuant to T.C.A. § 36-1-117-(d)(2) that the custodians through Juvenile Court should have received notice of the adoption petition.

The Court did not have sufficient information before it to make a correct ruling on the child's best interests and as such, rescinds its Order of October 8, 2019.

The trial court did not specify in its order the procedural rule under which it was setting aside the adoption decree. Paternal Aunt also did not specify a procedural rule in her motion to set aside. We note that "in ruling on post-trial motions filed by the parties, the courts of this state are required to consider the substance of the motion rather than its form or title." *Dunlap v. Dunlap*, 996 S.W.2d 803, 812 (Tenn. Ct. App. 1998). On appeal, Paternal Aunt argues in part that the trial court's decision to set aside the prior adoption was supported by operation of Tennessee Rule of Civil Procedure 60.02. However, given that Paternal Aunt's motion to intervene and to set aside was filed less than thirty days after entry of the decree, we determine that the adoption decree was still

an appealable judgment under Tennessee Rule of Civil Procedure 59.04 and that Paternal Aunt's motion to set aside should therefore be construed as a Rule 59.04 motion to alter or amend. *See Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) ("Rule 59.04 allows a party to seek relief from a judgment within thirty days after being entered; conversely, Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment."). Tennessee Rule of Appellate Procedure 4(b)(4) provides in pertinent part that "if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party . . . under Rule 59.04 to alter or amend the judgment[,] the time for appeal for all parties shall run from the entry of the order . . . granting or denying any other such motion." *See* Tenn. R. App. P. 4(a) (providing a thirty-day time period for the filing of a notice of appeal from a final judgment);

As to Paternal Aunt's status to file a Rule 59.04 motion, Tennessee Rule of Appellate Procedure 4(f) provides that "[f]or purposes of this rule, the terms 'party' and 'parties' shall include any person filing a motion to intervene pursuant to Tenn. R. Civ. P. 24."[3] In this case, Paternal Aunt, who had not been named as a party in Maternal Grandmother's adoption petition, filed a motion seeking permission to intervene as a petitioner to adopt the Child coupled with a motion requesting that the trial court set aside the adoption decree. Paternal Aunt attached copies of the juvenile court documents, including the juvenile court's orders granting her custody of the Child, restraining her from selling the Duplex, and granting Maternal Grandmother agreed visitation with the Child. The trial court entered two separate orders on November 8, 2019, one *sue sponte* setting aside the adoption decree and one granting Paternal Aunt's motion to intervene and returning custody of the Child to her pending further proceedings. Maternal Grandmother has not raised an issue on appeal concerning the trial court's grant of Paternal Aunt's motion to intervene.

In expressly acting *sua sponte* to set aside the prior adoption in a separate order, the trial court indicated that it was acting on its own initiative. Tennessee Rule of Civil Procedure 59.05 provides in relevant part that "[w]ithin thirty (30) days after entry of judgment the court on its own initiative may alter or amend the judgment, or the court may order a new trial for any reason for which it might have granted a new trial on motion of a party where no such motion has been filed." Here, the trial court's order setting aside the adoption decree was entered thirty-one days after the original entry date.

---

[3] Providing for an intervention as of right, Tennessee Rule of Civil Procedure 24.01 states:

> Upon timely motion any person shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties; or (3) by stipulation of all the parties.

However, because Paternal Aunt filed her motion to intervene and set aside within thirty days of the original judgment's entry, the judgment was subject to the trial court's revision on the court's own initiative as well as in response to Paternal Aunt's motion. *See Grissim v. Grissim*, 637 S.W.2d 873, 875 (Tenn. Ct. App. 1982) ("Under this rule, if part of a judgment is challenged by a post trial motion and the power of the trial court is extended to change such challenged part, then the trial court has not finally adjudicated all of the claims, rights and liabilities; and, the judgment is subject to revision (including setting aside) before entry of final judgment adjudicating all claims, rights and liabilities of the parties."); *Brown v. Wal-Mart Discount Cities*, No. 01A01-9705-CV-00217, 1998 WL 44958, at *8 (Tenn. Ct. App. Feb. 6, 1998) (citing *Grissim* with approval in holding that "in light of a timely-filed motion for new trial, the thirty-day period for the court to alter or amend the judgment was tolled"), *aff'd but criticized on other grounds by Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000).

"The motion to alter or amend allows the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters." *Chadwell v. Knox Cnty.*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998) (quoting *Spencer v. Hurd Inv. Props., Inc.*, 1991 WL 60541, at *4 (Tenn. Ct. App. Apr. 23, 1991)). As this Court has explained regarding motions to alter or amend a judgment:

> The purpose of a motion to alter or amend a judgment "is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (citation omitted). "The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* (citation omitted). On appeal, we review a trial court's decision regarding a motion to alter or amend a judgment under an abuse of discretion standard. *Id.* (citation omitted).

*Stricklin*, 490 S.W.3d at 11. Additionally, Rule 59.05 requires that a trial court "specify in its order the grounds for its action" when the court alters or amends a judgment on its own initiative.

In its order, the trial court found that in initially granting Maternal Grandmother's adoption petition, it had been provided with insufficient information to correctly determine the Child's best interest. The trial court specifically found that the pleadings contained "inaccurate and misleading information," that Maternal Grandmother's counsel had made "incomplete statements of fact," and that Maternal Grandmother's testimony in chambers had been a factor. Through Paternal Aunt's motion, the trial court was made

aware of the juvenile court proceedings, including the existence of the juvenile court's orders designating and recognizing Paternal Aunt as the Child's custodian.

As to the chancery court's temporary guardianship appointment, Maternal Grandmother had attached to her adoption petition the chancery court's "Letter of Temporary Guardianship" issued to her on September 30, 2019. However, Maternal Grandmother did not present the chancery court's concomitantly entered temporary guardianship order to the trial court until she subsequently attached it to her response to Paternal Aunt's motions. The chancery court had clearly stated in its order that the guardianship appointment was in response to an "*Emergency Ex Parte Petition for Guardianship of the Child's Person and Estate*" (underlined emphasis added) and that "[t]his temporary order shall be in effect for no longer than 60 days from date of entry or until further order of this Court." As the trial court found, it had not been informed through Maternal Grandmother's adoption petition that the guardianship petition was set for a contested hearing in chancery court on October 10, 2019, merely two days after the in-chambers hearing on Maternal Grandmother's adoption petition in the trial court. Thus, the trial court also became aware through Paternal Aunt's motion of the *ex parte* nature of the guardianship order and the contested nature of the guardianship proceeding.

Additionally, the trial court found in its order setting aside the adoption that due to the *ex parte* nature of the chancery court's guardianship order and the chancery court's subsequent rescission of the order, Paternal Aunt, as the Child's custodian under the juvenile court's order, should have been provided with notice of Maternal Grandmother's adoption action in the trial court. In its initial adoption decree, the trial court had found that Maternal Grandmother "had legal and physical custody" of the Child and that she had obtained such custody on September 30, 2019, through the chancery court's guardianship order. The trial court thereby had based its grant of Maternal Grandmother's adoption petition on a prior judgment that was subsequently rescinded as void.

On September 30, 2019, Maternal Grandmother had simultaneously filed in the chancery court a "Petition for Guardianship of the Child's Person and Estate" and an "Emergency *Ex Parte* Petition for Temporary Guardianship of the Child's Person and Estate," both of which were presented as exhibits during the instant proceedings. In both chancery court petitions, Maternal Grandmother had referred to Paternal Aunt as the Child's "current custodian" and had stated that Paternal Aunt resided at the Duplex with the Child. In both petitions, Maternal Grandmother had alleged, *inter alia*, that by entering into a purchase and sale agreement, Paternal Aunt had violated an order entered by the juvenile court restraining her from selling the Duplex. However, Maternal Grandmother did not reference the open juvenile court case in any additional detail and did not provide notice to Paternal Aunt of her chancery court petitions. The chancery

court had entered its order granting the *ex parte* petition on the same day the petition was filed without an evidentiary hearing.  It is undisputed that Paternal Aunt did not learn of the temporary guardianship order until she attempted to collect the Child at school and discovered that Maternal Grandmother had taken the Child after presenting a court order to the school.  In the chancery court, Paternal Aunt then filed a motion to dismiss Maternal Grandmother's guardianship petition, and the matter came for a contested hearing before the chancery court on October 10, 2019.

As Maternal Grandmother points out, following the hearing, the chancery court entered two orders dismissing Maternal Grandmother's petition for temporary guardianship.  In the first, entered on the day of the hearing, the chancery court found that it did not have subject matter jurisdiction because "the same issues [were] presently pending" in the juvenile court.  In the subsequent order, entered one week later, the chancery court stayed "all matters related to the minor child" based on the filing of adoption proceedings in the trial court.  In its order setting aside the adoption, the trial court stated:  "On October 10, 2019, the Chancellor rescinded his Order for Temporary Guardianship due to there being an open Juvenile Court case."  On appeal, Maternal Grandmother asserts that the trial court and Paternal Aunt "have erroneously relied on the first order as drafted by [Paternal Aunt's] counsel" and that the first order was "overridden" by the second.

On the contrary, we find no indication in the chancery court's second dismissal order that it was amending or correcting any error in its first order, and both orders were properly signed and entered by the court.  *See Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) ("It is well-settled that a trial court speaks through its written orders— not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders." (quoting *Anil Constr., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014)) (footnote omitted).[4]  In its second dismissal order, the chancery court made the additional ruling that all matters should be stayed in the chancery court due to the adoption proceedings in the trial (circuit) court.  *See* Tenn. Code Ann. § 36-1-116(f)(1) (2021) (providing that upon the filing of an adoption petition, the court in which the petition is filed "shall have exclusive jurisdiction of all matters pertaining to the child").  Thus, the chancery court initially found that it lacked subject matter jurisdiction to enter an order of guardianship because the same issues were pending in juvenile court and subsequently also found that the filing of the adoption petition in the trial court necessitated a stay.

"Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it."  *In re Estate of Trigg*, 368 S.W.3d 483,

---

[4] The record contains no transcript of the October 10, 2019 chancery court hearing.

489 (Tenn. 2012). "As orders and judgments entered by courts lacking subject matter jurisdiction are void, 'issues regarding subject matter jurisdiction should be considered as a threshold inquiry' and 'resolved at the earliest possible opportunity.'" *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 660 (Tenn. Ct. App. 2021) (quoting *In re Estate of Trigg*, 368 S.W.3d at 489). "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Under common law, "[i]t is the rule in Tennessee that the [c]ourt which first acquires the matter, takes the exclusive jurisdiction to end the matter." *In re Tyler G.*, No. M2016-02170-COA-R9-PT, 2017 WL 1736707, at \*3 (Tenn. Ct. App. May 3, 2017) (quoting *Wilson v. Grantham*, 739 S.W.2d 776, 777 (Tenn. Ct. App. 1986)). However, "[t]his common law rule has been expanded by statute in adoption proceedings" in that "once an adoption petition is filed, the adoption court acquires 'exclusive jurisdiction of all of all matters pertaining to the child[.]'" *In re Tyler G.*, 2017 WL 1736707, at \*3 (quoting Tenn. Code Ann. § 36-1-116(f)(1)). Tennessee Code Annotated § 36-1-116(f)(2) (2021) further provides in pertinent part:

> [A]ny proceedings that may be pending seeking the custody or guardianship of the child or visitation with the child who is in the physical custody of the petitioners on the date the petition is filed . . . shall be suspended pending the court's orders in the adoption proceeding, and <u>jurisdiction of all other pending matters concerning the child</u> . . . <u>shall be transferred to and assumed by the adoption court; provided, that until the adoption court enters any orders affecting the child's custody or guardianship as permitted by this part, all prior parental or guardian authority, prior court orders regarding custody or guardianship, or statutory authority concerning the child's status shall remain in effect</u>. Actions suspended by this section, regardless of the stage of adjudication, shall not be heard until final adjudication of the action for termination of parental rights or adoption regarding the same child, even if such adjudication of the termination of parental rights or adoption will render the custody, guardianship, or visitation action moot.

(Emphasis added.)

Although the chancery court's rulings have not been appealed for review by this Court, we note that the chancery court properly found in its second dismissal order that all proceedings regarding the Child in that court must be suspended pending resolution of the adoption petition. However, this did not change the accuracy of the chancery court's

finding in its first dismissal order that the issues brought before it by Maternal Grandmother were the same issues already involved in the juvenile court case, meaning that at the time the order of temporary guardianship was entered, the chancery court did not have subject matter jurisdiction over the matters pertaining to the Child. We determine that the trial court accurately found that the temporary guardianship order had been determined by the chancery court to be void for lack of subject matter jurisdiction.

Relying in part on her argument that the chancery court found it lacked subject matter jurisdiction to proceed with a matter regarding the Child not because of the juvenile court proceedings but because of her initiation of adoption proceedings in the trial court, Maternal Grandmother insists that she was the current custodian and that Paternal Aunt was merely the "former custodian" at the time the adoption petition was filed. Following Maternal Grandmother's logic to its conclusion, we discern that she is essentially arguing that the chancery court's temporary guardianship order nullified the juvenile court's custody order. We disagree. As the chancery court itself subsequently found, it lacked subject matter jurisdiction over issues pertaining to the Child at the time it entered the temporary guardianship order because those issues were pending in the juvenile court.

Once informed of Paternal Aunt's status as a custodian of the Child under the juvenile court orders, the trial court found that Paternal Aunt should have received notice of Maternal Grandmother's adoption petition pursuant to Tennessee Code Annotated § 36-1-117(d)(2). The applicable version of Tennessee Code Annotated § 36-1-117(d) (Supp. 2019) provided:

> (1) Other biological or legal relatives of the child or the adult are not necessary parties to the proceeding and shall not be entitled to notice of the adoption proceedings <u>unless they are the guardian or custodian of the child or the conservator of the adult at the time the petition is filed</u>.
>
> (2) The legal custodian of the child may only receive notice of the proceeding and may only present evidence as to the child's best interests.

(Emphasis added.)

Maternal Grandmother contends that the trial court erred in its application of this statute because Paternal Aunt was not the legal custodian of the Child but merely a "former custodian." Having determined that Paternal Aunt was the legal custodian of the Child under the juvenile court order at the time of the adoption petition's filing and

- 16 -

noting that she is undisputedly a biological relative of the Child, we further determine that pursuant to § 36-1-117(d)(1), Paternal Aunt was <u>entitled</u> to notice of Maternal Grandmother's adoption petition. The trial court cited § 36-1-117(d)(2) in its order, and, although not raised by Maternal Grandmother as an issue, we recognize the permissive language, "<u>may</u> only receive notice of the proceeding" (emphasis added), contained in that subsection as opposed to the use of "entitled" in subsection -117(d)(1). *See, e.g.*, *North v. Westgate Resorts, Ltd.*, No. E2017-01560-COA-R3-CV, 2018 WL 4405547, at *3 (Tenn. Ct. App. Sept. 17, 2018) ("The statute's use of the term 'may' is permissive, not mandatory . . . ."). However, we conclude that § 36-1-117(d)(1) was fully applicable under the facts of this case and that the trial court did not err in finding that Paternal Aunt was entitled to notice under the statute.[5]

Finally, Maternal Grandmother insists that "[t]he binding effect of adoption precluded the [trial court's] actions" in setting aside the prior adoption decree. In support of this postulate, she relies on Tennessee Code Annotated § 36-1-122 (2021), which provides in relevant part:

(a)      When a child is adopted pursuant to this part, the adoptive parents shall not thereafter be deprived of any rights in the child, at the insistence of the child's biological or prior legal parents or guardian of the child or any other person or agency except in the same manner and for the same causes as are applicable in proceedings to deprive biological or legal parents or guardians of their children or wards as provided by law.

(b)(1) After the final order of adoption is entered, no party to an adoption proceeding, nor anyone claiming under such party, may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound by the order, except for such appeal as may be allowed by law.

_____

[5] Effective March 6, 2020, after the filing of the instant adoption action, the General Assembly amended Tennessee Code Annotated § 36-1-117(d)(2) to provide:

The legal custodian of the child <u>or any person or entity appointed guardian of the person or property of the child pursuant to an order that does not specifically include the right to adopt or consent to the adoption of the child and that was not entered as a result of a surrender, parental consent, termination of parental rights, or finding that the child is without any living person entitled to notice pursuant to subsection (a)</u> may only receive notice of the proceeding and may only present evidence as to the child' s best interests.

*See* 2020 Tenn. Pub. Acts, Ch. 525, § 8 (S.B. 1769) (underlined section added by amendment).

- 17 -

(2)  In no event, for any reason, shall an adoption be overturned by any court or collaterally attacked by any person or entity after one (1) year from the date of entry of the final order of adoption by a court of competent jurisdiction. This provision is intended as a statute of repose.

Maternal Grandmother argues that once the initial adoption decree was entered in her favor, Paternal Aunt's only legal recourse to challenge the adoption was to file an action alleging dependency and neglect against Maternal Grandmother or seeking termination of Maternal Grandmother's parental rights. To the contrary, we have determined that Paternal Aunt's filing of a timely motion to intervene coupled with what we construe to be a motion to alter or amend the judgment tolled the finality of the judgment until the trial court ruled on Paternal Aunt's motions. Moreover, we determine that Paternal Aunt submitted documentation with her motions that provided the trial court with information it did not have at the time of the adoption decree's entry and that supported the trial court's finding that Paternal Aunt was entitled to notice of the adoption proceedings. We conclude that the decision to set aside the initial adoption decree granted to Maternal Grandmother was well within the discretion of the trial court.

## V.  Order Granting Paternal Aunt's Adoption Petition

Maternal Grandmother also contends that the trial court erred in granting Paternal Aunt's intervening petition to adopt the Child. She specifically argues that the evidence did not support the trial court's findings that Paternal Aunt could financially provide for the Child, that Paternal Aunt was a fit person to have the custody and care of the Child, and that adoption by Paternal Aunt was in the Child's best interest. Paternal Aunt argues that the trial court properly conducted a best interest analysis to find that it was in the best interest of the Child to be adopted by Paternal Aunt and that the evidence preponderated in favor of this finding. Upon thorough review of the record and applicable authorities, we determine that although the trial court generally applied the proper comparative fitness analysis to determine the best interest of the Child, one element of that analysis was flawed to the point of reversible error in that the trial court heard the nine-year-old Child's testimony alone in chambers without attorneys or a court reporter present and then did not announce the content of that testimony to the parties until the court had made its final decision, offering no opportunity for the parties to offer countervailing evidence.

### A.  Comparative Fitness with Competing Adoption Petitions

In a case involving competing adoption petitions, our Supreme Court has approved the application of a comparative fitness analysis to determine the child's best interest as

well as the parties' comparative fitness and ability to provide financially for the child. *In re Sidney J.*, 313 S.W.3d at 776. As the High Court explained:

> One stated purpose of Tennessee's adoption statutes is to protect "[t]he rights of children to be raised in loving homes that are capable of providing proper care for adopted children and that the best interests of children in the adoptive process are protected." Tenn. Code Ann. § 36-1-101(a)(3) (2005). Although Tennessee's adoption statutes do not outline a specific procedure by which a trial court evaluates two competing adoption petitions, a comparative fitness analysis furthers the purpose of ensuring that a child is placed in the best possible home. Indeed, trial courts currently engage in a comparative fitness analysis to determine which parent is the more fit custodian. *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn.1999); *see* Tenn. Code Ann. § 36-6-106 (2005 & Supp. 2009).

*Id.*

*In re Sidney J.* involved an original and an intervening adoption petition, each filed by a set of grandparents after the child's father had been convicted of murdering the child's mother and had consented to termination of his parental rights as a co-petitioner with his parents. *Id.* at 773, 774 n.1. The central issue involved whether this Court had erred in concluding that petitioners who did not have physical custody of the child were precluded from intervening in the adoption action that had been filed by petitioners who did have physical custody. *Id.* at 773. Reversing this Court's decision, our Supreme Court held that Tennessee Code Annotated § 36-1-116(f)(1) provides an exception to the physical custody requirement for intervening petitioners. *Id.* at 773. The High Court reinstated the trial court's judgment in its entirety, including its comparative fitness analysis of the two sets of petitioners. *Id.* at 776-79. The *Sidney J.* trial court had "permitted both sets of grandparents to present evidence regarding their fitness, their ability to provide for Sidney financially, and Sidney's best interests" pursuant to Tennessee Code Annotated § 36-1-120(a)(10), (11), and (13),[6] and the best interest factors set forth in Tennessee Code Annotated § 36-6-106(a). *Id.* at 776, 777 n.3.

We note that this Court has distinguished situations in which an existing guardianship of the child is involved, such as when full guardianship rights are held by

---

[6] Tennessee Code Annotated § 36-1-120(a) (2021) sets forth the requirements for what a "final order of adoption must state," including (a)(10) ("That the petitioners are fit persons to have the care and custody of the child;"), (a)(11) ("That the petitioners are financially able to provide for the child;"), and (a)(13) ("That the adoption is for the best interest of the child[.]").

the Department of Children's Services, from the facts in *In re Sidney J.* because in those cases the guardian must either consent to the adoption petition or have the guardianship terminated by the action of a petitioner pursuant to Tennessee Code Annotated § 36-1-113 (2021). *See In re Haily A. S.*, No. M2011-02760-COA-R3-CV, 2012 WL 3090311 (Tenn. Ct. App. July 30, 2012); *cf. In re Alexis S.*, No. E2018-01989-COA-R3-CV, 2019 WL 5586820, at *11 (Tenn. Ct. App. Oct. 29, 2019) (citing *In re Sidney J.*, 313 S.W.3d at 776, in determining a comparative fitness analysis under Tenn. Code Ann. § 36-6-106 to be appropriate when deciding between competing guardianship petitions). Inasmuch as the instant action involves competing adoption petitions with neither petitioner having an existing guardianship in effect, we determine that the trial court properly applied a comparative fitness analysis utilizing the best interest factors set forth in Tennessee Code Annotated § 36-6-106(a).

The version of Tennessee Code Annotated § 36-6-106(a) (2021) in effect at the time of the initial adoption petition's filing provided the following factors for a court to consider, when relevant and applicable, in any proceeding requiring a custody determination for a minor child:[7]

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

---

[7] Effective to actions filed after March 18, 2022, the General Assembly has amended Tennessee Code Annotated § 36-6-106(a) to add a sixteenth factor: "Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more." *See* 2022 Tenn. Pub. Acts, Ch. 671, § 1 (H.B. 1866).

(3)   Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)   The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)   The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)   The love, affection, and emotional ties existing between each parent and the child;

(7)   The emotional needs and developmental level of the child;

(8)   The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child.  The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3).  The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9)   The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)  The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)  Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

## B. The Child's Testimony

In support of her overarching issue challenging the trial court's grant of Paternal Aunt's adoption petition, Maternal Grandmother argues in part that the trial court erred when it "weighed heavily" the Child's testimony in its best interest analysis. Maternal Grandmother asserts that "[t]he parties and attorneys were not told what took place during the in-camera interview" and that a note the Child had written in a journal and a statement she had made during the initial uncontested hearing demonstrated that the Child desired to be adopted by Maternal Grandmother. In response, Paternal Aunt points out that the parties agreed at trial to the Child's testifying in private with the trial court judge. We determine that under the facts and circumstances of this case, it was reversible error for the trial court to deny the parties an opportunity to present evidence in response to the Child's in camera testimony.

"It has long been the rule in Tennessee that a private interview of the court with a minor child is not objectionable where the decision as to custody is based solely or primarily upon evidence heard in open court." *Todd v. Todd*, No. 03A01-9108-CH-284, 1992 WL 55578, at *2 (Tenn. Ct. App. Mar. 24, 1992) (citing *Hicks v. Hicks*, 176 S.W.2d 371 (Tenn. 1943)). The issue of the Child's testimony is especially relevant to the statutory best interest factor that allows the trial court to consider the reasonable preference of a child at least twelve years of age and, upon request, the preference of a child younger than twelve years. *See* Tenn. Code Ann. § 36-6-106(a)(13); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997).

In *Rutherford*, this Court was tasked with reviewing a custody case involving a six-year-old child whom the trial court interviewed in chambers without the parties, the attorneys, or a court reporter present. *Rutherford*, 971 S.W.2d at 956. With evidence that

was "sharply disputed" and a comparison between the parents that the trial court stated "was difficult to resolve," this Court determined that without the ability to "evaluate the Trial Judge's private interview with the child, i.e., whether the Trial Judge, in weighing the evidence, allowed the interview with the child to be a factor that determined the outcome in this case," this Court could not adequately "review all of the proof heard and considered by the Trial Judge." *Id.* The *Rutherford* Court vacated the trial court's judgment, holding:

> The Trial Judge has discretion to interview children apart from the courtroom setting if he considers it is in the best interest of the child. However, if he elects to follow this procedure, he must examine the child "in the presence of attorneys for each side and in the presence of the court reporter." *Newburger v. Newburger*, 10 Tenn. App. 555, 566 (1930), and in order to have a complete record on appeal, a transcript of such evidence must be filed.

*Id.* at 956-57.

While citing the *Rutherford* holding with approval, this Court has nonetheless in some subsequent cases distinguished situations in which no transcript of the child's interview with the trial court was made but the parties and their counsel or simply the parties' counsel were present, noting that in such cases, the parties were aware of the testimony's content and had the option to file a Tennessee Rule of Appellate Procedure 24(c) statement of the evidence concerning the child's testimony. *See In re Spencer E.*, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at *3 (Tenn. Ct. App. Jan. 20, 2011) (affirming the trial court's judgment when both parties' counsel were present during the court's interview with the child); *Walker v. Stevens*, No. M2007-02858-COA-R3-CV, 2008 WL 4830805, at *7-8 (Tenn. Ct. App. Nov. 5, 2008) (affirming the trial court's judgment when the parties as well as their counsel were present during the interview with the child).

However, in a case in which the child's interview was with the trial court alone and the court had not disclosed the content of the interview to the parties prior to entering its ruling, this Court held:

> [P]rejudice results, and therefore reversible error, where the trial court fails to disclose to the parties what occurred during the interview, which would afford the parties an opportunity to rebut statements made during the private interview, and renders its decision based upon the elicited conversation. *Hicks* [*v. Hicks*, 176 S.W.2d 371 (Tenn. 1943)]; *see also Smith v. Smith*, 425 N.W.2d 854 (Minn. App. 1988), *Rose v. Rose*, 340

S.E.2d 176 (W. Va. 1985) (reversible error where trial court failed to provide court reporter for *in camera* interview). Hence, the record must support the Trial Court's decision without regard to the Court's interview of the minor child to avoid prejudice to [the father].

*Todd*, 1992 WL 55578, at *2-3 (vacating the trial court's judgment and remanding "for the receipt and preservation of the testimony of the minor child, together with any other evidence the parties wish to introduce"); *cf. Willcutts v. Willcutts*, No. W2002-02636-COA-R3-CV, 2004 WL 404497, at *13 (Tenn. Ct. App. Mar. 4, 2004) (citing the holding in *Todd* with approval while determining that the trial court's decision to interview the children in chambers on two occasions with no one else present and to reveal the content of the testimony on only one of the occasions was "at most, harmless error" when "[w]ithout consideration of the testimony of the minor children," the record contained "substantial evidence" of the father's "mental abuse of the children, physical violence toward his former wife, past struggles with substance abuse, and numerous instances of unstable and potentially dangerous behavior," supporting the trial court's award of custody to the mother).

In the case at bar, during the first day of trial, which was a Friday, the GAL announced in open court the Child's request that she be allowed to speak to the trial court judge in private. The court expressed reluctance to interview the Child alone in chambers but granted the request, stating:

> But I will come back out—if we all agree that that's the way to do it, I will come back out and express exactly what was expressed to me so that everybody knows and it's on the record. That's fine, I'll talk to her privately, then I'll come back out and put it on the record so that everybody knows what was said.

Paternal Aunt's counsel asked if the Child could testify that day because the Child was in the courthouse, and Maternal Grandmother's counsel did not object.

As agreed, the trial court interviewed the Child in chambers, without counsel or a court reporter present, before closing proceedings for the day. Following the in-chambers interview, the court announced:

> I'm going to change what I said we would be doing earlier, the reason being, I'm going to hold until we have our next hearing, and I will then announce what was said to me. Until then, because we're not going to finish this trial, I'm not going to express what was said to me in chambers. That is just so little [the Child] doesn't have any stress or pressure about

- 24 -

what was said to me in between because I don't know how long it will take for us to reschedule, okay. One way or the other, somebody's feelings will be hurt. She is very, very, very, considerate to all parties here.

The court then conferred with counsel for both parties and the GAL, setting the second day of trial for the upcoming Monday. Regarding the interim, the court stated:

I want to seriously and strongly advise everybody, because I'm asking you to do something that's going to be so hard to do for the next couple of days, and that is, we do not ask [the Child] at all anything about what she told me, nothing, okay. We don't get one of her siblings to ask her to tell you what she told me, all right? She just would like to just keep going until I make a ruling.

When the trial court reconvened for the second day of trial, Maternal Grandmother presented the remainder of her case, the parties presented their closing arguments, and the GAL offered a statement. The trial court then stated that it would be issuing findings of fact and conclusions of law, stating as to the Child's testimony only the following:

Again, I ask everybody not to put any more pressure on [the Child]. That is one little girl that really truly, like the guardian said, does not necessarily— is not forthright with either side necessarily all the time because she does not want to hurt anybody, and she is extremely, extremely stressed about this proceeding, so let's just try to keep that in mind, okay.

Without any intervening announcement of the content of the Child's testimony, the trial court issued its written memorandum opinion approximately three weeks later, followed closely by its final judgment. In its judgment, the court set forth findings of fact, incorporating a summary of testimony presented during trial with particular reference to testimony offered by the parties and the Child's teachers. Concerning the Child's testimony, the court stated:

[The Child] was a credible witness. Both parties, the Guardian Ad Litem, and [the Child] desired that [the Child] speak to the judge in chambers alone. [The Child] is intelligent and well-spoken. She struggles with being caught in the middle of this litigation. [The Child] strongly desires to be adopted by Paternal Aunt. [The Child] considers Paternal Aunt to be her mother and the other girls in the home her sisters. [The Child] is forbidden to call Paternal Aunt, "mother" at Maternal Grandmother's house. [The Child] stated that she has been lying to Maternal Grandmother for over a year about her preferences. [The Child]

- 25 -

was very nervous about her Maternal Grandmother knowing her real feelings. [The Child] loves Maternal Grandmother but does not want to live with her. [The Child] credibly denied that Paternal Aunt ever spanked her with a stick. She stated that she had not been spanked since she was four years old.[8] The Child has a very strong bond with Paternal Aunt, [the other young girl in Paternal Aunt's custody], and [Paternal Aunt's two daughters].

Inasmuch as the trial court did not announce the content of the Child's testimony prior to making its final ruling, we must determine whether the other evidence, apart from the Child's testimony, preponderated so strongly in favor of Paternal Aunt that Maternal Grandmother could not have been prejudiced by her lack of knowledge of the testimony and accompanying inability to offer countervailing proof. *See, e.g.*, *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988) (affirming the trial court's custody judgment upon determining that despite lack of documentation of the child's in-chambers testimony, "[u]nder the record in this case we cannot say that the evidence preponderates against the finding of the trial court that the best interests of the child are served by the award of custody to Wife."); *Willcutts*, 2004 WL 404497, at *13 ("Our concerns [regarding the children's in-chambers testimony] are alleviated by the fact that there is ample evidence in the record to support the chancery court's decision that it was in the best interests of the children to designate Mother as the primary residential parent."); *cf. Colvard v. Colvard*, No. E2020-01066-COA-R3-CV, 2021 WL 2769183, at *3 (Tenn. Ct. App. July 1, 2021) (vacating the trial court's custody judgment when, *inter alia*, the trial court's private interview with the children had been wholly undocumented and "[t]he problem with the proof [was] compounded by the fact that the trial court failed to make sufficient findings in its order concerning the statutory best interest factors.").

In the instant action, the trial court noted in its analysis of the statutory best interest factors, pursuant to Tennessee Code Annotated § 36-6-106(a)(13), that the Child "prefer[red] to be adopted by Paternal Aunt." The court also directly referred to the Child's testimony in considering factor (6) (the love, affection, and emotional ties existing between each party and the child) and factor (15) (any other factors deemed relevant by the court). *See id.* As to factor (15), the court found:

> While [the Child] wants to be adopted by Paternal Aunt, a complete severing of her relationship with her half-sister and Maternal Grandmother would not be in her best interests as she is bonded to them. [The Child] wants the stability of being adopted, but she still wants to visit with the other side of her biological family.

---

[8] Maternal Grandmother and L.P. testified that the Child had reported being spanked with a stick by Paternal Aunt, who denied in her testimony ever having spanked the Child with an object.

Additionally, the trial court's findings as to factors (1) (the strength, nature, and stability of the child's relationship with each party), (9) (the child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors), and (10) (the importance of continuity in the child's life) all emphasized the Child's "stronger" bond with Paternal Aunt and the other children in Paternal Aunt's household as compared to her bond with Maternal Grandmother. Given the court's description of the Child's testimony that she had a "very strong bond" with Paternal Aunt and the other children in Paternal Aunt's home, these findings appear also to have been influenced, at least in part, by the Child's testimony.

As to other best interest factors, the trial court found that factors (3) (attendance at a parent education seminar), (11) (evidence of physical or emotional abuse), and (12) (character and behavior of others in the household) were inapplicable. The court further found that factors (7) (the child's emotional needs and developmental level), (8) (the moral, physical, mental, and emotional fitness of each party), and (12) (the character and behavior of other persons in each household) weighed as neutral to the parties.

Completely apart from the Child's testimony, the court found under factor (2) (each caregiver's past and potential for future performance of parenting responsibilities, including willingness to facilitate a close and continuing parent-child relationship with the other caregiver when consistent with the child's best interest) that Maternal Grandmother "did not give any notice of her petition for emergency guardianship or petition to adopt to Paternal Aunt" and that she had "refused to allow [the Child] contact with Paternal Aunt" and the other children in Paternal Aunt's household "during the five weeks she had guardianship of [the Child]." As to factor (4) (the disposition of each party to provide necessities), the court found that "Maternal Grandmother has more financial resources than Paternal Aunt" but that "Paternal Aunt has adequate resources and the appropriate desire to provide for [the Child's] needs." Concerning factor (5) (the degree to which a party has been the primary caregiver), the court found that Paternal Aunt had "performed the majority of the parenting responsibilities."

Upon careful review, we determine that the Child's testimony influenced the trial court's best interest analysis to the point that we cannot find that the other evidence in the record definitely would have preponderated in favor of the court's judgment in favor of Paternal Aunt without the Child's testimony. The evidence in this case for each party is simply too close to discern that the outcome would have been the same if the court had not interviewed the Child. For this reason, we conclude that it was reversible error for the court to withhold its announcement of the substance of the Child's testimony until the court issued its memorandum opinion when the parties no longer had an opportunity to offer evidence in response to the testimony.

We recognize and respect the trial court's concern for the Child's "struggles with being caught in the middle of this litigation." However, we also note that in the trial court's announcement after hearing the Child's testimony, the court stated: "I'm going to hold until we have our next hearing, and I will then announce what was said to me." Although it is clear that the parties agreed to have the Child interviewed by the trial court judge in private, it is not at all clear from the record that the parties agreed to be uninformed as to the content of the Child's testimony until it was written into the final judgment. For this reason and because "failure to object does not insulate the Trial Court from committing reversible error," *see Rutherford*, 971 S.W.2d at 957 (Op. on Pet. to Rehear), we find Paternal Aunt's argument regarding the parties' agreement to the Child's testimony to be unavailing.

We do not find this to be a case such as *Rutherford* wherein this Court determined that a new trial was necessary, *see id.* at 957, or this Court's recent decision in *Colvard*, 2021 WL 2769183, at *4-6, wherein the lack of a record of the trial court's in camera interview with the children was coupled with insufficient factual findings, necessitating remand for the trial court to comply with Tennessee Rule of Civil Procedure 52.01. We also see no reason in this case why the Child's in camera testimony as previously presented to the trial court and subsequently memorialized in the court's judgment cannot stand as evidence, provided that the parties are offered an opportunity to present evidence in response to the Child's testimony. *See Todd*, 1992 WL 55578, at *2 ("[P]rejudice results, and therefore reversible error, where the trial court fails to disclose to the parties what occurred during the interview, which would afford the parties an opportunity to rebut statements made during the private interview, and renders its decision based upon the elicited conversation."). The Child therefore need not testify again. We vacate the judgment granting adoption to Paternal Aunt and remand for the trial court to conduct an evidentiary hearing solely to afford the parties an opportunity to present evidence in response to the Child's testimony and to enter a judgment after consideration of all proof presented during the trial and on remand.

## VI. Visitation Issues

Maternal Grandmother has also raised an issue regarding the visitation schedule set forth for her by the trial court in its final judgment, arguing that the court abused its discretion by *sua sponte* changing the visitation schedule that previously had been in effect under the agreed juvenile court order. In response, Paternal Aunt has raised an issue concerning whether Maternal Grandmother is judicially estopped or otherwise precluded from raising her visitation issue because she purportedly conducted herself in the trial court as though the juvenile court's order did not exist. Having vacated the trial court's judgment granting Paternal Aunt's adoption petition and having remanded for

limited additional proof, we determine that the visitation issues raised by the parties are pretermitted as moot.

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's order setting aside its initial grant of Maternal Grandmother's adoption petition but vacate the trial court's judgment granting Paternal Aunt's intervening adoption petition.  We remand this case for the trial court to conduct an evidentiary hearing solely to afford the parties an opportunity to present evidence in response to the Child's testimony and to enter a judgment after consideration of all proof presented during the trial and on remand.  We also remand for collection of costs below.  Costs on appeal are taxed one-half to the appellant, Christina S., and one-half to the appellee, Amy T.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE